1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

THE HONORABLE RICHARD A. JONES

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JILL ALEXANDER, an individual, | No. 2:13-cv-1369-RAJ |
| Plaintiff, | DEFENDANT BOEING'S MOTION FOR SUMMARY JUDGMENT |
| v. | NOTED FOR MOTIONS CALENDAR: May 9, 2014 |
| THE BOEING COMPANY, a corporation doing business in the State of Washington, | |
| Defendant. | |

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  UNDISPUTED FACTS ............................................................................................ 2

    A.  Alexander's Job at Boeing ................................................................................ 2

    B.  Alexander's 2012 Attendance ........................................................................... 2

    C.  Alexander's 2013 Attendance and Leave ......................................................... 4

    D.  Alexander Fails to Return from Her Final Leave of Absence ........................... 5

    E.  Boeing Processes Alexander's Resignation for Job Abandonment ................... 7

    F.  Alexander Withdraws from Alternative Dispute Resolution ............................. 8

    G.  Procedural History ............................................................................................ 9

III.  ARGUMENT ............................................................................................................ 9

    A.  Summary Judgment Standard ........................................................................... 9

    B.  Alexander's FMLA and WFLA Claims Should Be Dismissed on
        Summary Judgment ........................................................................................... 9

        1.  There is no evidence that Alexander's use of FMLA leave was a
            "negative factor" in Boeing's decision to terminate her
            employment .......................................................................................... 11

        2.  Alexander was ineligible for FMLA leave after January 1, 2013 ........... 12

        3.  Alexander did not provide "sufficient notice" of her request for
            FMLA leave on June 25, 2012 ............................................................... 15

    C.  Alexander's Reasonable Accommodation Claim Should Be Dismissed on
        Summary Judgment ......................................................................................... 16

        1.  Alexander's migraines prevented her from maintaining regular and
            predictable attendance, which was an "essential function" of her
            job ....................................................................................................... 17

        2.  Alexander cannot show that a reasonable accommodation was
            available .............................................................................................. 18

        3.  Boeing engaged Alexander in the interactive process and offered
            her numerous reasonable accommodations ............................................. 19

    D.  Alexander's Disparate Treatment Claim Should Be Dismissed on
        Summary Judgment ......................................................................................... 20

        1.  Ms. Alexander was not qualified to perform her job ............................... 21

        2.  Alexander can identify no similarly situated non-disabled
            employee who received more favorable treatment .................................. 22

        3.  Alexander has no evidence of pretext ..................................................... 22

IV.  CONCLUSION ....................................................................................................... 23

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL28921786.8

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946)................................................................13

*Arenas-Grube v. Menasha Joint Sch. Dist.*,
    No. 10-C-809, 2010 WL 5300194 (E.D. Wis. Dec. 20, 2010) ................................13

*Bachelder v. Am. W. Airlines, Inc.*,
    259 F.3d 1112 (9th Cir. 2001) .........................................................10

*Brock v. Seto*,
    790 F.2d 1446 (9th Cir. 1986) .........................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................9

*Demmings v. Pac. Maritime Ass'n, ILWU Local 19*,
    No. C11-1864 RAJ, 2013 WL 5373181 (W.D. Wash. Sept. 25, 2013)..........................21, 22

*Gilliam v. United Parcel Serv., Inc.*,
    233 F.3d 969 (7th Cir. 2000) .........................................................12

*Godwin v. Hunt Wesson, Inc.*,
    150 F.3d 1217 (9th Cir. 1998) .........................................................21

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005)...................................................................13

*Kelley v. Amazon.com*,
    No. 12-CV-5132-TOR, 2013 WL 6119229 (E.D. Wash. Nov. 21, 2013)..........................22

*Kraus v. Cnty. of Clark*,
    304 F. App'x 496 (9th Cir. 2008) (unpublished) .......................................23

*Lewis v. Holsom of Fort Wayne, Inc.*,
    278 F.3d 706 (7th Cir. 2002) .........................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................9

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)...............................................................20, 21, 22

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
## (continued)

*McEnroe v. Microsoft Corp.*,
  No. CV-09-5053-LRS, 2010 WL 4806864 (E.D. Wash. Nov. 18, 2010)...............................17

*Mellen v. Trustees of Boston Univ.*,
  504 F.3d 21 (1st Cir. 2007).........................................................................................12

*Raines v. Seattle Sch. Dist. No. 1*,
  No. C09-203-TSZ, 2013 WL 496059 (W.D. Wash. Feb. 7, 2013)...................................22, 23

*Righi v. SMC Corp.*,
  632 F.3d 404 (7th Cir. 2011) ...................................................................................11, 12

*Samper v. Providence St. Vincent Med. Ctr.*,
  675 F.3d 1233 (9th Cir. 2012) ...................................................................................18

*Sanders v. City of Newport*,
  657 F.3d 772 (9th Cir. 2011) ................................................................................10, 15

*Staunch v. Continental Airlines*,
  511 F.3d 625 (6th Cir. 2008) ................................................................................13, 15

*Strohl v. Brite Adventure Center, Inc.*,
  No. 08 CV 259(RML), 2010 WL 3236778 (E.D.N.Y. Aug. 13, 2010)...............................14

*Waggoner v. Olin Corp.*,
  169 F.3d 481 (7th Cir. 1999) ...................................................................................18

*Walker v. Elmore Cnty. Bd. of Educ.*,
  379 F.3d 1249 (11th Cir. 2004) ...............................................................................15

*Washburn v. Gymboree Retail Stores, Inc.*,
  No. C11-822RSL, 2012 WL 3818540 (W.D. Wash. Sept. 4, 2012)...............................10, 19

S<small>TATE</small> C<small>ASES</small>

*Anica v. Wal-Mart Stores, Inc.*,
  120 Wn. App. 481 (2004) .........................................................................................22

*Clarke v. Shoreline Sch. Dist. No. 412*,
  106 Wn.2d 102 (1986) .........................................................................................18, 22

*Davis v. Microsoft Corp.*,
  149 Wn.2d 521 (2003) .....................................................................................17, 18, 20, 22

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
## (continued)

*Davis v. W. One Auto. Grp.*,
  140 Wn. App. 449 (2007) ........................................................................21

*Dedman v. Wash. Personnel Appeals Bd.*,
  98 Wn. App. 471 (1999) ........................................................................18

*Doe v. Boeing Co.*,
  121 Wn.2d 8 (1993) ........................................................................18

*Domingo v. Boeing Empls.' Credit Union*,
  124 Wn. App. 71, 87-88 (2004) ........................................................................23

*Fey v. State*,
  174 Wn. App. 435 (2013) ........................................................................17, 18, 19

*Frisino v. Seattle Sch. Dist. No. 1*,
  160 Wn. App. 765 (2011) ........................................................................20

*Kastanis v. Educ. Emps. Credit Union*,
  122 Wn.2d 483 (1993) ........................................................................20

*MacSuga v. Cnty. of Spokane*,
  97 Wn. App. 435 (1999) ........................................................................19

*Riehl v. Foodmaker, Inc.*,
  152 Wn.2d 138 (2004) ........................................................................16, 18

**FEDERAL STATUTES**

29 U.S.C. § 213(a)(1) ........................................................................14

29 U.S.C. §§ 2601-2654 ........................................................................9

29 U.S.C. § 2611(2)(A) ........................................................................12

29 U.S.C. § 2612(a) ........................................................................10

29 U.S.C. §§ 2612(a)(1) ........................................................................9

29 U.S.C. § 2612(e) ........................................................................15

29 U.S.C. § 2614(a) ........................................................................10

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
### (continued)

29 U.S.C. § 2614(a)(1) ................................................................................................................9

29 U.S.C. § 2615(a)(1) ..............................................................................................................10

29 U.S.C. § 2615(a)(2) ..............................................................................................................10

**STATE STATUTES**

RCW 49.46.010(3)(c) ................................................................................................................14

RCW 49.60.180 ...................................................................................................................9, 16

RCW 49.78.300 ..........................................................................................................................9

RCW 49.78.410 ........................................................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ..................................................................................................................9

Fed. R. Civ. P. 56(e) ..................................................................................................................9

**FEDERAL REGULATIONS**

5 C.F.R. § 551.206 ....................................................................................................................14

29 C.F.R. § 785.12 ....................................................................................................................14

29 C.F.R. § 825.110(a) .............................................................................................................12

29 C.F.R. § 825.110(c)(1) .........................................................................................................13

29 C.F.R. § 825.110(c)(3) .........................................................................................................13

29 C.F.R. § 825.220(b) .............................................................................................................10

29 C.F.R. § 825.302(a) (2009) ..................................................................................................15

29 C.F.R. § 825.302(b) .............................................................................................................15

29 C.F.R. § 825.302(d) .............................................................................................................15

29 C.F.R. § 825.303(a) (2009) ..................................................................................................15

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – v

**TABLE OF AUTHORITIES**
(continued)

29 C.F.R. § 825.303(c)............................................................................................................16

**STATE REGULATIONS**

WAC 296-128-510................................................................................................................14

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – vi

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.    INTRODUCTION

Plaintiff Jill Alexander lost her job at Boeing when she failed to report to work or call in for three consecutive work days.  Alexander had been on a three-month leave of absence due to migraine headaches.  She was scheduled to return to work April 29, 2013.  She was notified of her return date and instructed how to extend the leave if she needed more time off.  Nonetheless, she did not report to work or contact her supervisor.  Each morning, her supervisor called her cell phone and left messages.  After three days of no-show, no-call, Boeing ended Alexander's employment for job abandonment.

Alexander, who was not ill that week, testified under oath that she simply missed the messages because she was not "monitoring" her cell phone.  Declaration of Zachary P. Jones ("Jones "), Ex. A at 33 (Deposition of Jill Alexander ("Alexander Dep.") 112:7-9).  But phone records obtained after her deposition show that she was monitoring her phone and, in fact, listened to her messages on Monday and Wednesday, in each case hours after her manager had left messages for her.  Declaration of Kenneth Yang ("Yang ") ¶ 11, Ex. A at 6.  Yet she did not return her manager's calls or report to work, even after being warned that her job was in jeopardy.  In fact, immediately after listening to the first message on the Monday she was due back, Alexander called a Kirkland bar and grill, instead of her job.  *Id.* ¶ 11, Ex. A at 6; Jones ¶ 5, Ex. D at 73.

In challenging her dismissal, Alexander alleges that Boeing discriminated against her because of her disability (migraine headaches), failed to reasonably accommodate her, and interfered with her rights under the Family and Medical Leave Act ("FMLA") and the Washington State Family Leave Act ("WFLA").  For the reasons below, her claims are meritless, both legally and factually, summary judgment should enter, and this lawsuit should be dismissed.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## II.     UNDISPUTED FACTS

### A.     Alexander's Job at Boeing

Alexander worked as a procurement manager on Boeing's 787 Dreamliner project, supervising a team of 10 to 13 employees. Jones Ex. A at 15-16 (Alexander Dep. 47:17-49:22); Declaration of Jeff Sells ("Sells") ¶ 4. Her team was responsible for managing the suppliers in Asia, Australia, Europe, and the United States who build the Dreamliner's wings and other components. Jones Ex. A at 15-16 (Alexander Dep. 47:17-49:22); Sells ¶ 4. Alexander earned $104,300 in base salary, plus benefits and bonuses. Declaration of Melody Luschei ("Luschei"), Ex. A at 5.

### B.     Alexander's 2012 Attendance

Alexander has suffered from migraine headaches since she was 11 years old. Jones Ex. F at 85. Despite her headaches, prior to 2012 Alexander generally maintained regular attendance at Boeing. *See*, *e.g.*, Luschei Ex. B at 12-14.

In early 2012, however, Alexander's attendance became erratic. Between January and June, she missed 33 full days of work and another 11 partial days. *See id.* Ex. B at 14-16; Jones Ex. G at 92-97. Boeing employees who miss work can "cover" their absences in a variety of ways—for example, through sick time, vacation time, approved FMLA, or approved disability leave. Declaration of Rachael Williams ("Williams") ¶ 5. If the time is covered, it is considered excused. Absences not covered by one of these methods are unexcused and can result in discipline. *Id.*

To cover her absences in 2012, Alexander used a combination of paid sick time and paid vacation time. Sells ¶ 5. However, because Alexander did not have enough accrued sick or vacation time, 11 of her absences in the first half of 2012 were unexcused. Jones Ex. G at 92-97. On June 21, Alexander's supervisor Jeff Sells, his supervisor Mike Dickinson, and Boeing human resources representative Lisa-Marie Gustafson met with Alexander to discuss her

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL28921786.8

excessive absenteeism. Sells ¶ 7; Jones Ex. A at 21 (Alexander Dep. 72:4-17).[1]  Alexander was warned that her attendance was unsatisfactory and she would be disciplined if it did not improve. Sells ¶ 7; *see* Jones Ex. A at 20-22 (Alexander Dep. 71:12-73:3).  Because Alexander was out of sick and vacation time, Gustafson recommended that she contact "TotalAccess," Boeing's benefits service center, to see whether she might be eligible for FMLA.  Sells ¶ 7; *see* Jones Ex. A at 22 (Alexander Dep. 73:4-12).  TotalAccess automatically routes employee leave requests to Aetna, Boeing's third-leave administrator.  Williams ¶ 9.

Alexander took Gustafson's advice.  She saw her doctor on June 22 and submitted a medical certification for intermittent FMLA leave for her migraines the same day.  Jones Ex. F at 88-90.  The next week, Alexander missed three more days of work—June 25, 26, and 27.  Luschei Ex. B at 16; Jones Ex. F at 93.  June 26 and 27 were approved for FMLA leave.  Jones Ex. B at 61 (Deposition of Rachael Williams ("Williams Dep."), Ex. 27).  Alexander's June 25 absence was not approved because Alexander did not request FMLA leave until after she returned to work on June 28.  *Id.*; Jones Ex. A at 22 (Alexander Dep. 73:11-23).  Boeing policy requires that intermittent FMLA leave be requested within two business days of starting the leave.  Williams Ex. D at 20.  The unexcused absence of June 25 was Alexander's twelfth absence (11 full days and 1 partial day) in 2012 not covered by approved leave.  *See* Jones Ex. G at 112-117; Luschei Ex. B at 14-16.  Because Alexander had previously been warned, she received a Corrective Action Memorandum or "CAM."  Jones Ex. A at 40 (Alexander Dep., Ex. 9).

In July, August, and September of 2012, Alexander missed another 19 days of work (and 1 partial day).  Luschei Ex. B at 16-17; Jones Ex. G at 118-120.  Alexander used FMLA leave to cover those absences.  Sells ¶ 9.  Alexander missed four more days in early October and then, on October 16, commenced a two-month, medical leave of absence.  *Id.*  Jones Ex. G at 121;

---

[1]At her deposition, Alexander misidentified the human resources representative who attended the meeting as "Renee Martin."  Jones Ex. A at 20 (Alexander Dep. 71:18).

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Luschei Ex B. at 17.  That leave lasted until December 17, when she returned to work for four days just before Boeing's annual paid holiday shutdown between Christmas and New Year's. Sells Decl. ¶ 9; Luschei Ex. B at 17-18; Jones Decl., Ex. G at 123.  All of those absences were excused.

**C.     Alexander's 2013 Attendance and Leave**

After the holiday break, Alexander reported for work on Wednesday, January 2, 2013. However, she stayed home the rest of the week to care for a sick dog.[2]  Jones Ex. B at 62 (Williams Dep. Ex. 30), Ex. G at 124; Williams Ex. A at 8.  Under normal Boeing policy, vacation must be pre-scheduled and may not be used for last-minute personal absences. Williams ¶ 4.  However, because it was unclear whether Ms. Alexander had been clearly instructed on the policy, Boeing let her use the vacation days to excuse the absences.  Williams ¶¶ 4-5;

Alexander missed work again on January 18 and 21 (a Friday and a Monday), reporting "stomach issues."  Sells ¶ 12, Ex. A at 11-12; Luschei  Ex. B at 18; Jones Ex. G at 124.  She covered those absences with sick leave.  Sells ¶ 12.  Alexander missed work on January 23, 24, 25 and 28, reporting migraine headaches.  *Id.* ¶ 13; Luschei  Ex. B at 18; Jones Ex. G at 124. She used the remaining balance of her sick leave to cover part of this time, but she did not have enough to cover all three days.  Sells ¶¶ 13-14.  Alexander contacted TotalAccess to request FMLA leave for the remainder, but she was no longer eligible for FMLA because she had missed so many days over the previous 12 months that she no longer met the statutory minimum of 1,250 hours worked over the previous 12 months.  Luschei Ex. C at 21; Jones Ex. F at 86-87; Sells Ex. B at 29-30.

Alexander returned to work on Tuesday, January 29.  By that point, she had already missed eight days of work that month and she had accrued several new, unexcused absences.

---

[2] Alexander owns or co-owns six Pomeranian-breed dogs, several of which are "show" dogs. Jones  Ex. A at 10-14 (Alexander Dep. 15:20-19:2).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Luschei Ex. B at 18; Jones Ex. G at 124. Upon her return, Sells and Williams told Alexander that Boeing would be issuing another CAM for unsatisfactory attendance. Jones Ex. A at 24 (Alexander Dep. 86:16-21). Later that day, Williams informed Alexander that the CAM would include a five-day suspension and it would run from Friday to Thursday to correspond with her normal workweek. *Id.* at 30 (Alexander Dep. 99:21-25); Williams ¶¶ 7-8, Ex. B at 13-14; Jones Ex. B at 49-50 (Williams Dep. 50:21-51:3).

Sells and Williams also discussed with Alexander several options to help her avoid future violations of Boeing's attendance policies. For example, Williams advised Alexander to contact TotalAccess to explore a non-occupational, medical leave of absence. Jones Ex. A at 24 (Alexander Dep. 86:11-16); Sells ¶ 14; Williams ¶ 7. Boeing's non-occupational medical leave "permits time away from work to recover from a health condition that is not job related and which precludes the employee from performing his or her regular job assignment." Sells Ex. B at 33. In addition, after Alexander suggested that the stress of her job might be triggering her migraine headaches, Williams reminded her that less stressful jobs might be available. Williams ¶ 7; Sells ¶ 14; Jones Ex. A at 24, 27 (Alexander Dep. 86:6-7, 93:3-4). Alexander agreed that a less stressful, non-management position might be a "very good option." Jones Ex. A at 28 (Alexander Dep. 94:7-13).

Alexander did not come work the next day. Instead, Alexander called Williams and told her she was taking a medical leave of absence. Jones Ex. A at 28 (Alexander Dep. 94:2-5); *see* Sells ¶ 15, Ex. B at 31-34. Because Alexander commenced an approved leave of absence, Boeing never did issue the second CAM. Jones Ex. B at 49 (Williams Dep. 50:13-23).

**D.     Alexander Fails to Return from Her Final Leave of Absence**

Alexander requested leave through Friday, April 26.[3] Jones Ex. F at 81. Two weeks before her leave was scheduled to end, Aetna sent Alexander a letter outlining the return to work

---

[3] Although Alexander remained off work for three consecutive months, her claim for short term disability benefits was denied because Aetna determined that Alexander's medical documentation did not demonstrate an impairment that prevented her from working continuously. *See* Jones Ex. F at 82-84.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

process.  The letter read, "**You are receiving these instructions because your leave is scheduled to end on 04/26/2013 <u>and you are expected to return to work on your next scheduled work day</u>**," which was April 29.  Jones Ex. A at 41 (Alexander Dep. Ex. 12) (emphasis in original).  If Alexander needed an extension, she was instructed to "**[r]equest an extension before your leave ends.**"  *Id.*  The letter further warned that unexcused absences could result in "corrective action up to and including termination."  *Id.*

Boeing expected Alexander to return to work on April 29.  Sells ¶ 17, Ex. C at 36.  Sells advised his team that Alexander was returning to her management position.  *Id.*  Sells had Alexander's work space prepared for her to resume her management role, and informed the procurement agent who had served as temporary manger during Alexander's absence that he would be returning to his non-management role upon her return on April 29.  Sells Ex. C at 36.  For her part, Alexander concedes that she knew her leave was expiring on that date, and that in March she so advised her physician.  Jones Decl. Ex. H at 132 (Response to RFA No. 2).

Yet Alexander did not report to work or call in as scheduled on Monday, April 29.  Sells ¶ 18; Jones Ex. A at 31 (Alexander Dep. 110:4-8).  Nor did she attempt to extend her leave of absence before it ended, as Aetna had instructed.  Sells ¶ 18.  Alexander also did not see a doctor to seek medical approval to extend her leave.  Jones Ex. A at 18-19 (Alexander Dep. 61:7-62:3).

When Alexander failed to show up for work, Sells phoned her repeatedly, but Alexander did not answer or return his calls.  On April 29, Sells called Alexander's cell phone at 9:16 a.m. and left a voice message telling her she was expected back at work and asking her to call him.  Sells ¶ 18; Yang ¶ 10, Ex. B at 8.  Sells also dialed the landline phone number that Alexander had provided to Boeing.  Sells ¶ 18; Yang ¶ 10, Ex. B at 8.  But an unknown man answered and told him that no one named Jill lived there.  Sells ¶ 18.  Even though Alexander's Boeing cell phone was her only working telephone at the time, Jones Ex. A at 9 (Alexander Dep. 14:7-13), she claims that she did not hear her phone ring or check her voicemail, explaining, "I'm not one

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

of those people that's chained to my cell phone . . . I leave it in my purse for days on end and don't even look at it." *Id.* at 32, 34, 35 (111:7-11, 113:17-18, 112:16-20).

In fact, Boeing phone records show that Alexander *did* check her voicemail on the afternoon of Monday, April 29, the first day she was expected back at work.  Yang ¶ 11, Ex. A at 6.  Specifically, she checked her voicemail at 2:46 p.m. that day, more than five hours after Sells left his message.  But Alexander did not return Sells' call.  Instead, immediately after listening to her messages, Alexander placed a call to The Game Neighborhood Grill & Bar, a Kirkland restaurant near her home.  Yang ¶ 11, Ex. A at 6; Jones ¶ 5, Ex. D at 73.

The next day, April 30, Alexander again failed to report for work or call in to say she would be absent.  Sells ¶ 19.  At 9:17 a.m., Sells called her.  *Id.*; Yang Ex. B at 8.  Alexander did not answer, so Sells left another message.  Alexander did not return his call.  Sells ¶ 19.  Nor did Alexander call TotalAccess to extend her leave.  Williams ¶ 10.

On Wednesday, May 1, Alexander still did not return to work.  She still did not call in and she did not call TotalAccess to extend her leave.  Sells Decl. ¶ 20; Williams ¶ 10.  At 9:04 a.m., Sells tried her cell phone a third time.  Sells ¶ 20; Yang ¶ 12, Ex. B at 8.  Alexander did not answer and Sells left another message, urging her to call him and warning her that she was putting her job in jeopardy.  Sells ¶ 20, Ex. D at 39.  Alexander did not call him back.  *Id.*

Alexander finally contacted Sells by sending him a text message at 6:55 p.m. that evening.  The text said she had not been monitoring her phone and  would call him the next morning.  Sells ¶ 21.  Though she had been warned her job was on the line, Alexander did not report to work next morning.  Sells ¶ 22.

### E.    Boeing Processes Alexander's Resignation for Job Abandonment

Under Boeing policy, "Failure of the employee to contact the Company within three working days after the expiration of his or her leave of absence . . . may result in termination of employment."  Williams Ex. C at 17-19.  As a result of Alexander's failure to report to work as

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

scheduled, Boeing processed her resignation for job abandonment.  Williams ¶ 12.  Sells and Williams called Alexander on Friday, May 3 to tell her of the decision.  Sells  ¶ 23.

Notably, Alexander does not claim she was medically unable to work the week of April 29.  Although she called TotalAccess on Thursday, May 2, to request a leave extension, she never submitted medical information that would confirm she needed additional time off for medical reasons beyond the April 26 date set by her doctors.  Jones Ex. A at 18-19 (Alexander Dep. 61:20-62:3).  In fact, Alexander admits that she has not seen any health care professional for any reason since April 3, 2013.  *Id.*

## F.   Alexander Withdraws from Alternative Dispute Resolution

Alexander appealed her separation from Boeing through the company's Alternative Dispute Resolution ("ADR") procedure.  Alexander argued that her text message to Sells on Wednesday night should have sufficed as notice "within 3 working days, per policy" following her failure to return from a leave of absence.  Jones Ex. A at 43 (Alexander Dep., Ex. 17).  She requested reinstatement with Boeing.

While the ADR process was pending, Sells spoke with Jeff Plant, a Boeing director who was friends with Alexander.  Sells ¶ 25; Declaration of Jeffrey Plant ("Plant") ¶ 5.  Plant said he might have a non-management position open on his team, and asked Sells if he would be open to Alexander returning to Boeing in that capacity.  Sells ¶¶ 5, 25; Plant ¶ 5.  Sells, who had himself promoted Alexander, said that he had no objections to Alexander rejoining the company if that was the result of the ADR process.  Sells ¶ 25; Plant ¶ 5.  Plant told all this to Alexander.  Plant ¶ 6; Jones Ex. E at 75-76.  Plant told Alexander that her "destiny" was in her hands:  if she wanted to get back with Boeing, then ADR was the way forward.  Plant ¶ 6; Ex. E at 75; Jones Ex. E at 75-75.  On June 10, 2013, without explanation, Alexander withdrew from the ADR process.  Sells ¶ 25, Ex. E at 42.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## G.   Procedural History

Less than six weeks later, Alexander filed suit in King County Superior Court alleging claims under Washington law for disability discrimination, failure to accommodate, RCW 49.60.180, and interference with leave rights under the WFLA, RCW 49.78.300.  Amended Complaint ("Compl."), Dkt. #7, ¶¶ 1-3, at 4.  Boeing removed to this Court, invoking its diversity jurisdiction.  Notice of Removal, Dkt. #1, ¶¶ 3-10.  After removal, Alexander added claims under the FMLA, 29 U.S.C. §§ 2601-2654.

## III.   ARGUMENT

## A.   Summary Judgment Standard

A court should grant summary judgment when, viewing the record in the light reasonably most favorable to the non-moving party, "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden to prove that no genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.10 (1986).  The moving party may discharge this burden by showing an absence of evidence on an essential element of a claim on which the non-movant bears the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).  The burden then shifts to the opposing party to establish that a genuine issue of material fact actually exists.  *Id.*  The party opposing summary judgment must "go beyond the pleadings" to "designate specific facts" establishing a genuine issue for trial.  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

## B.   Alexander's FMLA and WFLA Claims Should Be Dismissed on Summary Judgment

Alexander alleges that Boeing "interfered with [her] protected medical leaves" in violation of the FMLA and the WFLA.  Compl., Dkt. # 7, ¶ 2, at 4.  The FMLA entitles "eligible employees" to up to 12 weeks of unpaid leave each year for their own serious illnesses or to care for family members.  29 U.S.C. §§ 2612(a)(1), 2614(a)(1).  The WFLA "mirrors the provisions

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL28921786.8

of the FMLA," and " 'must be construed to the extent possible in a manner that is consistent with [the FMLA].' " *Washburn v. Gymboree Retail Stores, Inc.*, No. C11-822RSL, 2012 WL 3818540, at *9 (W.D. Wash. Sept. 4, 2012) (quoting RCW 49.78.410).

The FMLA and WFLA (collectively, "FMLA") create "two interrelated, substantive employee rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). First, an eligible employee "has a right to use a certain amount of leave for protected reasons." *Id.*; *see* 29 U.S.C. § 2612(a). Second, an eligible employee "has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder*, 259 F.2d at 1122; *see* 29 U.S.C. § 2614(a). The FMLA makes it unlawful to "interfere with, restrain, or deny" these rights. 29 U.S.C. § 2615(a)(1). An "interference" may consist of an employer "refusing to authorize FMLA leave," 29 C.F.R. § 825.220(b), or considering an employee's use of protected leave as a "negative factor in an employment decision." *Bachelder*, 259 F.2d at 1124.[4]

To establish an FMLA interference claim, an employee must prove that (1) she was eligible for the FMLA's protections, (2) she worked for a covered employer, (3) she was entitled to leave, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). To withstand summary judgment on an interference claim, the plaintiff must produce material evidence that "her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder*, 259 F.3d at 1125.

For three reasons, Alexander lacks a viable FMLA interference claim. First, there is no evidence that Alexander's use of protected leave in 2012 was a negative factor in Boeing's decision to process her termination for job abandonment in May 2013. The undisputed evidence

---

[4] The FMLA also prohibits an employer from retaliating against employees for "opposing any practice made unlawful by this subchapter" or for instituting or participating in FMLA proceedings. 29 U.S.C. § 2615(a)(2). These "anti-retaliation" (or "anti-discrimination") provisions "do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder*, 259 F.3d at 1124. "Such action is, instead, covered under § 2615(a)(1)" as an interference claim. *Id.* The FMLA's anti-retaliation provisions are not applicable here.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

is that Boeing took this step not because Alexander took protected leave but because she did not *return* to work or call after her *unprotected* leave in 2013 expired. Second, it is undisputed that Alexander was ineligible for FMLA leave throughout 2013 because, at all times that year, she had worked fewer than 1250 hours in the previous 12 months. Third, Boeing did not interfere with Alexander's FMLA rights by issuing her a written warning for her unexcused absence on June 25, 2012, because it is undisputed that Alexander failed to provide Boeing with the required timely notice of her intent to take FMLA leave.

### 1. There is no evidence that Alexander's use of FMLA leave was a "negative factor" in Boeing's decision to terminate her employment.

Boeing processed Alexander's termination for job abandonment because she did not return to work or call in for three business days after her leave ended. Even after she had been told her job was at risk, and even though she was not experiencing any medical issues, Alexander failed to report to work that entire week. Boeing's policy is clear: "Failure of the employee to contact the Company within three working days after the expiration of his or her leave of absence or per collective bargaining agreement may result in termination of employment." Williams Ex. C at 17-19. Sells and Williams both testified that Alexander's violation of this policy was what motivated their decision to terminate her employment. Jones Ex. C at 67, 70 (Sells Dep. 23:1, 77:21-25); Jones Ex. B at 48 (Williams Dep. 42:10-24); Sells ¶ 22; Williams ¶¶ 11-12. There is no evidence that Alexander's use of FMLA leave the year before motivated Sells and Williams's decision in any way. Alexander broke a clear company rule and Boeing's decision-makers enforced it.

That rule, requiring employees report to work or call in after their leave expires, is perfectly consistent with the FMLA. "The FMLA does not authorize employees to 'keep their employers in the dark about when they will return' from leave." *Righi v. SMC Corp.*, 632 F.3d 404, 410-11 (7th Cir. 2011) (affirming summary judgment on FMLA claim where employee did not inform employer of duration of requested leave and did not return supervisor's follow-up

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 11

LEGAL28921786.8

phone calls) (quoting *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000));
*see also Mellen v. Trustees of Boston Univ.*, 504 F.3d 21, 26 (1st Cir. 2007) (affirming summary
judgment on FMLA claim where employee "failed to respond to [supervisor's] letter . . . stating
that [she] was expected back at work"; FMLA obligated her "to inform BU if she was intending
to claim FMLA leave beyond November 18"). Alexander not only failed to return to work on
April 29 after her leave had expired, she ignored Sells's multiple phone calls and voicemail
messages that day and in the days that followed, even though she checked her voicemail and
used her phone in this period. Alexander's "failure to respond to these calls or otherwise contact
[her] employer dooms [her] FMLA claim." *See Righi*, 632 F.3d at 410. Nothing in the FMLA
prevents Boeing from processing Alexander's termination under these undisputed facts.

### 2. Alexander was ineligible for FMLA leave after January 1, 2013.

Alexander's FMLA interference claim also fails because she was statutorily ineligible as
of January 1, 2013. To be "eligible" under the FMLA, an employee must have accrued at least
1,250 "hours of service" in the 12 months prior to the requested leave date. 29 U.S.C. §
2611(2)(A); 29 C.F.R. § 825.110(a).

Boeing maintained an accurate record of Alexander's hours worked—her own time
entries, which she herself submitted and certified as accurate. Every time entry Alexander
submitted contained the following notice: "Employees falsifying time or labor are subject to
company disciplinary action and possible civil and/or criminal liabilities." Williams ¶ 6. Under
Boeing policy, "[e]mployees are responsible for the accuracy of their own labor charging
information." Luschei Ex. D at 25. Based on the time records Alexander herself entered, in
January 2013 her actual hours worked in the prior twelve months never exceeded 1,208.7 hours.
Luschei Ex. C at 21.

In her deposition, Alexander claimed that she failed to report all the hours she worked,
Jones Ex. A at 35 (Alexander Dep. 118:11-13). Because Boeing kept accurate time records,
Alexander must prove that her "hours of service" are more than what is shown in Boeing's

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

records.  *See* 29 C.F.R. § 825.110(c)(3) (the employer bears the burden only if the "employer does not maintain an accurate record of hours worked by an employee").  The term "hours of service" in the FMLA follows the "principles established under the Fair Labor Standards Act (FLSA)."  29 C.F.R. § 825.110(c)(1).  In tracking FMLA hours of service, the employer may use any accurate accounting of actual hours worked applied using FLSA principles.  *Id.*  Under the FLSA, the employee "has the burden of proving that he performed work for which he was not properly compensated."  *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), partially superseded by statute on other grounds, as described in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005)).  It is undisputed that Alexander cannot meet this burden.  Alexander admits that she did not keep track of these supposedly unreported hours and has no way of ascertaining their total in the 12 months prior to January 24, 2013.  Jones Ex. A at 36 (Alexander Dep. 120:22-25).

Courts have repeatedly rejected attempts to get around the 1,250 minimum with vague, after the fact, testimony like Alexander's.  In *Staunch v. Continental Airlines*, 511 F.3d 625, 630 (6th Cir. 2008), for example, the employer provided evidence that the plaintiff had worked just 1,128 hours in the twelve months preceding her request for leave.  The plaintiff attempted to refute that evidence "with an undated list of tasks and hours she compiled based on her own recollection."  *Id.*  The Sixth Circuit affirmed the grant of summary judgment to the employer, holding that the plaintiff "failed to present evidence of *specific days and hours* that she worked performing these uncompensated tasks."  *Id.* (emphasis added).  The plaintiff's "undated, generalized list does not set forth specific facts showing a genuine issue for trial."  *Id.*

Alexander's "general allegations regarding the additional hours she worked" is insufficient as a matter of law to establish her eligibility under the FMLA.  *See Staunch*, 511 F.3d at 630; *see also Arenas-Grube v. Menasha Joint Sch. Dist.*, No. 10-C-809, 2010 WL 5300194, at *1 (E.D. Wis. Dec. 20, 2010) (affirming summary judgment to employer on FMLA claim where plaintiff's own estimation of her uncompensated time was not clearly enough to

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

exceed the 1,250-hour threshold).  That Alexander may "believe" her unreported hours would have been enough does not contradict the objective evidence in Boeing's payroll records, which themselves were based on Alexander's own submissions.

Moreover, Boeing neither authorized nor had reason to know that Alexander was working off the clock without recording her time.  Unreported work performed off-site qualifies as "hours of service" under the FMLA and FLSA only where the "employer knows or has reason to believe that the work is being performed."  29 C.F.R. § 785.12; *see, e.g.*, *Strohl v. Brite Adventure Center, Inc.*, No. 08 CV 259(RML), 2010 WL 3236778, at **5-6 (E.D.N.Y. Aug. 13, 2010) (plaintiff's testimony that she worked from home or during lunch break was insufficient to create triable issue of fact on FMLA claim because employer lacked "actual or constructive notice that she was performing work off-site").  Here, Sells was not aware Alexander was working after hours at all, let alone on a regular basis.  Sells ¶ 9.  Alexander offers nothing to rebut this.  Boeing had no reason to believe that Alexander, a manager who was responsible for knowing and enforcing Boeing policy, was working off the clock.

In addition, it is undisputed that Alexander, although an exempt, supervisory employee, received additional pay for hours worked in excess of 40 hours in a workweek, providing yet another incentive for her to accurately record all her time.[5]  Jones Ex. C at 68 (Sells Dep. 27:23-25); Sells ¶ 9.  Notably, Alexander did report hours over and above her regular hours in 2012.  Jones Ex. A at 37-38 (Alexander Dep. 121:15-122:14); Luschei Ex. B at 14-18.  Thus, her assertion that she did not report all her hours work is implausible as well as fatally vague.

No specific facts contradict the objective evidence that Alexander was ineligible for FMLA as of January 1, 2013.  As a matter of law, Boeing could not have interfered with her

---

[5] As a supervisor, Alexander was an "exempt" employee under the FLSA and Washington law and therefore not legally entitled to overtime pay.  *See* 29 U.S.C. § 213(a)(1); 5 C.F.R. § 551.206; RCW 49.46.010(3)(c); WAC 296-128-510 to -530.  Although under no legal obligation to do so, during this period, Boeing compensated procurement managers for hours worked in excess of 40 hours per week at their pro-rated hourly rate plus $6.50 per hour, subject to management discretion.  Williams ¶ 13.  This compensation policy is known as Boeing Extended Work Week ("EWW").  *Id.*  In 2012, Alexander submitted EWW time, Sells approved it, and Boeing paid her in accordance with its policies.  Sells ¶ 9.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

FMLA rights after that date.  *See, e.g.*, *Staunch*, 511 F.3d at 631 (because plaintiff "was not an 'eligible employee' under the FMLA," her "FMLA claims fail as a matter of law"); *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (ineligible employee's attempt to exercise FMLA rights is not protected by the FMLA).

### 3.    Alexander did not provide "sufficient notice" of her request for FMLA leave on June 25, 2012.

Finally, Alexander does not have an actionable FMLA interference claim arising out of the written warning she received for her unexcused absence on June 25, 2012.  Although Alexander requested FMLA leave to cover her absence, it is undisputed that Alexander waited until June 28 to make this request.  Boeing policies require employees to "[i]nitiate a timely request for an FMLA absence within two business days after the start of the leave."  Williams Ex. C at 21.  Because Alexander did not provide Boeing sufficient notice of her intent to use protected leave, the FMLA permitted Boeing to deny her request and formally warn her for the attendance infraction.

The FMLA requires that an employee provide notice to the employer of her intent to take protected leave.  *See* 29 U.S.C. § 2612(e).  The Department of Labor's FMLA regulations specify that an employee taking intermittent leave must provide the employer notice of the exact dates of the leave "as soon as practicable."  *See* 29 C.F.R. § 825.302(a) (2009); 29 C.F.R. § 825.303(a) (2009).[6]  The regulations state that "it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day" that she "becomes aware of the a need for FMLA leave."  29 C.F.R. § 825.302(b).  An employer may deny a leave request where the employee fails to comply with its "usual notice and procedural requirements."  *Id.* § 825.302(d); *see also id.* § 825.303(a).

---

[6] The Department of Labor amended the regulations effective March 7, 2013.  The applicable version is the one in effect at the time of the alleged violation at issue.  *See Sanders*, 657 F.3d at 778 n.4.  All citations to the regulations in this subsection refer to those in effect on July 6, 2012, when Boeing issued Alexander a CAM for unacceptable attendance.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Alexander did not provide Boeing notice "as soon as practicable" of her need for leave on June 25. Alexander became aware of her need for intermittent FMLA leave no later than the morning of June 25, when she experienced a migraine headache and did not report to work. Instead of requesting FMLA leave then, Alexander waited until she returned to work four days later, on June 28. There is no evidence that Alexander's migraine headaches were so severe on June 25, 26, or 27 that she was not "able to use . . . a phone," 29 C.F.R. § 825.303(c), or that any emergency or other extenuating circumstance prevented her from requesting leave.

Boeing's policy requiring two days' notice is straightforward, objectively reasonable, and consistent with the FMLA. *See, e.g.*, *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (granting summary judgment on FMLA interference claim where employer discharged employee for failing to comply with company policy requiring *advance* notice of FMLA leave). Alexander concedes that she did not comply with Boeing's two-day notice policy, which was clearly spelled out and was available for Alexander to review in Boeing's Leave of Absence Policy Handbook. Jones Ex. A at 22-23 (Alexander Dep. 73:15-74:23). It was not a violation of the FMLA for Boeing to count June 25 as an unexcused absence.

## C. Alexander's Reasonable Accommodation Claim Should Be Dismissed on Summary Judgment

Alexander alleges that Boeing "failed to provide a reasonable accommodation for Plaintiff's disability and failed to engage in the interactive process in violation of the Washington Law Against Discrimination, RCW 49.60.180" ("WLAD"). Compl., Dkt. # 7, ¶ 1, at 4. To establish a prima facie case for a reasonable accommodation claim, a plaintiff must show that (1) the employee had a disability that "substantially limited . . . her ability to perform the job"; (2) she was qualified to perform the "essential functions" of the job; (3) she gave the employer notice of the disability and its substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to it and medically necessary to accommodate the disability. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145 (2004).

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

Alexander's accommodation claim does not meet the second and fourth elements because (1) her migraines prevented her from maintaining regular and predictable attendance, which was an "essential function" of her job; (2) there is no evidence that any reasonable accommodation of Alexander's migraine condition was possible; (3) Boeing engaged in the interactive process with Alexander and offered her several reasonable accommodations of her migraine headaches.

### 1. Alexander's migraines prevented her from maintaining regular and predictable attendance, which was an "essential function" of her job.

To prove her accommodation claim, Alexander "must demonstrate that . . . she can perform the essential functions of the job as determined and applied by the employer—not that the employer could revamp the essential functions of a job to fit the employee." *Fey v. State*, 174 Wn. App. 435, 452-53 (2013). Alexander cannot make this showing because her migraine headaches prevented her from maintaining regular and predictable attendance at Boeing. In the 12 months prior to her separation from Boeing, Alexander worked only 91 out of 269 scheduled work days—a full-day attendance rate of only 33%, plus another 12.7 hours spread out over 7 partial days. Jones ¶ 8, Ex. G at 116-128. In her deposition, Alexander admitted that "reliable" attendance was an essential function of her job at Boeing. Jones Ex. A at 25-26 (Alexander Dep. 88:23-89:14) ("I knew I needed to be reliable and be there every day and be counted upon. . . . It's a necessary part to any job.").

Where a medical condition prevents an employee from actually showing up to work on a regular basis, it is fatal to an accommodation claim under the WLAD. *See, e.g.*, *McEnroe v. Microsoft Corp.*, No. CV-09-5053-LRS, 2010 WL 4806864, at *2 (E.D. Wash. Nov. 18, 2010) (granting summary judgment on WLAD accommodation claim because "Plaintiff cannot show that an exclusive teleworking arrangement would have been a reasonable accommodation for the positions sought because in-person attendance was an essential function of each of the three positions"); *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 535-36 (2003) (affirming in part judgment as a matter of law on WLAD accommodation claim because employee's disability

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

prevented him from "providing the job presence and service essential to [his] systems engineer position"). The Ninth Circuit has held that "[i]t is a 'rather common-sense idea . . . that if one is not able to be at work, one cannot be a qualified individual' " under the Americans with Disabilities Act ("ADA").[7] *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)).

The undisputed evidence is that regular attendance was an essential function of the procurement manager position at Boeing, which required coordinating and overseeing an entire team of employees and interfacing with customers and suppliers. *See* Sells¶ 4; Luschei Ex. E at 27 (procurement manager's responsibilities include "work[ing] well in a team environment," and "motivat[ing] employees"). An "employer's identification or judgment as to the essential functions of a position is entitled to deference." *Fey*, 174 Wn. App. at 443. Alexander cannot establish that she could perform this essential function of the procurement manager position.

### 2. Alexander cannot show that a reasonable accommodation was available.

Alexander's inability to maintain steady attendance not only prevented her from performing an essential function of her job, it also meant that no reasonable accommodation of her disability was possible. The employer's "duty to accommodate is 'limited to those steps reasonably necessary to enable the employee to perform his or her job.' " *Riehl*, 152 Wn.2d at 146 (quoting *Doe v. Boeing Co.*, 121 Wn.2d 8, 21 (1993)). Alexander cannot meet this burden because she cannot identify any accommodation that would have enabled her to attend work regularly and predictably. *See, e.g.*, *Davis*, 149 Wn.2d at 534-35 ("an employer may discharge a handicapped employee who is unable to perform an *essential function* of the job, without attempting to accommodate that deficiency.") (quoting *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 119 (1986)) (emphasis in *Davis*); *see also Dedman v. Wash. Personnel Appeals*

---

[7] Washington courts draw on ADA case law in interpreting the "essential function" standard of the WLAD. *See, e.g.*, *Davis*, 149 Wn.2d at 533-34.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Bd.*, 98 Wn. App. 471, 485 (1999) ("employer's duty to accommodate does not require either elimination of an essential job function").  For this reason, too, her accommodation claim fails.

### 3.    Boeing engaged Alexander in the interactive process and offered her numerous reasonable accommodations.

Finally, Alexander claims that Boeing violated the WLAD by "fail[ing] to engage in the interactive process."  Compl., Dkt. # 7, ¶ 1, at 4.  This allegation provides no basis for relief. First, Alexander has no freestanding procedural claim against Boeing without evidence that any reasonable accommodation was possible.  Under the WLAD, an employer's "failure to engage in an interactive process does not form the basis of a disability discrimination claim in the absence of evidence that accommodation was possible."  *Fey*, 174 Wn. App. at 453.  The interactive process is a means to an end—it is the "best way to determine a reasonable accommodation." *MacSuga v. Cnty. of Spokane*, 97 Wn. App. 435, 443 (1999).  The interactive process "is not an end in and of itself."  *Washburn*, 2012 WL 3818540, at *10.

Second, Boeing *did* engage Alexander in the interactive process and *did* offer her numerous reasonable accommodations.  Apart from the many days of leave Boeing provided, Sells testified that he allowed Alexander to change her work schedule to attend medical appointments and offered various other accommodations with her, including "a different chair," a "different work space," a different type of computer," and other changes that might help her "relieve stress."  Jones Ex. C at 69 (Sells Dep. 60:4, 21-25).  The evidence is undisputed that, at every turn, Boeing took every reasonable step to help Alexander.  For example, in June 2012, after Alexander had exhausted her vacation and sick leave, Lisa-Marie Gustafson urged her to look into FMLA leave to help her avoid additional unexcused absences.  And in January 2013, when Alexander became ineligible for FMLA leave and was facing corrective action, Rachael Williams suggested that Alexander consider a medical leave of absence, which would also have covered her absences.  Jones Ex. A at 29 (Alexander Dep. 95:9-22).  Finally, Williams also suggested that Alexander consider applying for less stressful, non-management jobs.  A transfer

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

to a different position may qualify as a reasonable accommodation. *See, e.g.*, *Davis*, 149 Wn.2d at 537-38. Alexander admitted that moving to a "position outside of management with hopefully less stress" was "a very good option" and that her "plan was" to exercise this option "when [she] returned" from leave. Jones Ex. A at 28 (Alexander Dep. 94:7-13).

The problem, of course, is that Alexander never returned from leave. She did not show up to work or call in for three business days after her leave expired, and she ignored her manager's daily calls and messages entreating her to check in. The interactive process involves a "good faith exchange of information between parties." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 779-80 (2011). Instead of returning from her three-month leave to continue the dialogue with Boeing, Alexander was incommunicado for three days while Sells tried to reach her. Boeing reasonably treated her behavior as job abandonment.

Alexander's accommodation claim attempts to rewrite history, ignoring the evidence that Boeing offered her numerous reasonable accommodations throughout her tenure and worked repeatedly with her to save her job. But no matter what Boeing did, Alexander could not perform the essential function of her management position by maintaining regular and predictable attendance. In the absence of any genuine dispute over these issues, Boeing is entitled to summary judgment on Alexander's accommodation claim.

**D.     Alexander's Disparate Treatment Claim Should Be Dismissed on Summary Judgment**

Finally, Alexander accuses Boeing of disability discrimination based on disparate treatment, alleging that Boeing "wrongfully terminated [her] employment because of her disability" in violation of the WLAD. Compl., Dkt. # 7, ¶ 3, at 4. To withstand summary judgment on a disparate treatment claim, a WLAD plaintiff may (i) provide direct evidence of discrimination or (ii) proceed under the "indirect" method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 490 (1993). Direct evidence is evidence "which, if believed, proves the fact [of discriminatory

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  There is no direct evidence of animus in this case.

Under the *McDonnell Douglas* framework, a WLAD plaintiff must offer evidence to support four elements: (1) the employee is a member of a protected class, (2) the employee is qualified for the employment position or performing substantially equal work, (3) the employee suffered an adverse employment action, and (4) similarly situated employees not in plaintiff's protected class received more favorable treatment.  *Demmings v. Pac. Maritime Ass'n, ILWU Local 19*, No. C11-1864 RAJ, 2013 WL 5373181, at *3 (W.D. Wash. Sept. 25, 2013) (WLAD); *Davis v. W. One Auto. Grp.*, 140 Wn. App. 449, 459 (2007).  If the plaintiff succeeds, the burden shifts to the employer to identify a lawful, nondiscriminatory motive for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  If the employer does so, the burden then shifts back to the plaintiff to produce evidence that the employer's stated motive is pretextual.  *Id.*

Alexander's disparate treatment claim does not pass muster under the *McDonnell Douglas* framework.  First, because Alexander was unable to satisfy the essential job function of regular and predictable attendance, she was not qualified to perform the employment position and thus fails to satisfy the second element.  Second, there is no evidence that Boeing treated any similarly situated non-disabled employee more favorably.  Third, even if Alexander could establish a prima facie case, Boeing has presented evidence that it terminated Alexander's employment for a lawful, nondiscriminatory reason: she did not return from leave or call in within three working days.  No evidence shows this reason is pretextual.

### 1.     Ms. Alexander was not qualified to perform her job.

As explained above, Boeing could not reasonably accommodate Alexander's migraine headaches because they prevented her from maintaining regular and predictable attendance, an essential function of her job.  For the same reason, Ms. Alexander was not "qualified" for her position for the purposes of her disparate treatment claim.  An employee is not qualified if the employee cannot perform the job's essential functions either with or without a reasonable

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 21

accommodation.  *See, e.g.*, *Davis*, 149 Wn. 2d at 534-35 ("[A]n employer may discharge a handicapped employee who is unable to perform an essential function of the job, without attempting to accommodate that deficiency.") (quoting *Clarke*, 106 Wn.2d at 121 (WLAD "do[es] not necessarily prohibit the School District from discharging Clarke from his teaching position simply because he is handicapped, unless he is otherwise qualified to perform the essential functions of the job")); *Kelley v. Amazon.com*, No. 12-CV-5132-TOR, 2013 WL 6119229, at *12 (E.D. Wash. Nov. 21, 2013) (employer "entitled to terminate Plaintiff's employment since her disability-related limitation rendered her incapable of performing an essential function of her job").  Alexander's disparate treatment claim shares the same flaw as her accommodation claim: she was not qualified to perform an essential function of her position.

### 2. Alexander can identify no similarly situated non-disabled employee who received more favorable treatment.

To satisfy the *McDonnell Douglas* fourth element, Alexander must present evidence "that similarly situated individuals who did not have a disability were treated more favorably" by Boeing.  *See Demmings*, 2013 WL 5373181, at *4.  But there is no evidence that a similarly situated, non-disabled employee received better treatment.  Without a probative comparator, Alexander cannot establish her prima facie case.  *See, e.g.*, *Raines v. Seattle Sch. Dist. No. 1*, No. C09-203-TSZ, 2013 WL 496059, at *7 (W.D. Wash. Feb. 7, 2013) (granting summary judgment to employer on WLAD disparate treatment claim where plaintiff did not identify "even a single comparator, *i.e.*, a similarly situated non-protected employee who was treated more favorably").[8]

### 3. Alexander has no evidence of pretext.

Even if Alexander could establish a prima facie case of discrimination, Boeing has presented evidence that it terminated Alexander's employment for a legitimate, non-

---

[8] Some courts frame the fourth element more broadly, requiring the plaintiff to adduce evidence that she was discharged "under circumstances that raise a reasonable inference of unlawful discrimination."  *See, e.g.*, *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488 (2004).  Alexander cannot meet the fourth element under either formulation:  she has no probative evidence raising a reasonable inference of disability discrimination.

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

discriminatory reason:  she did not return to work or call in for three working days after her leave of absence.  Boeing's policy provides that it may terminate an employee who fails to contact the Company within three working days after her leave of absence ends.  Williams Ex. C at 17-19. As a factual matter, Alexander violated this policy.  Sells and Williams both confirmed that this was what motivated the decision to separate Alexander from Boeing.  Sells ¶ 22; Williams ¶¶ 11-12.  An employee's failure to show up to work after a leave represents legitimate grounds for termination.  *See, e.g.*, *Kraus v. Cnty. of Clark*, 304 F. App'x 496, 497-98 (9th Cir. 2008) (unpublished) (plaintiff "failed  to return to work after she had exhausted her allotted [FMLA] time, and was terminated for job abandonment"; she "offered no corroborating evidence to support her claim that the County's proffered reason was pretextual").

In light of this uncontroverted evidence, Alexander must present probative evidence that Boeing's stated reason is a pretext for discrimination.[9]  The record contains no such evidence, and summary judgment is appropriate for this reason as well.  *See, e.g.*, *Raines*, 2013 WL 496059, at *6-7 (granting summary judgment because, inter alia, employer presented evidence that it discharged plaintiff for "failure to report to work," and plaintiff did not "put forward non-speculative evidence indicating that such reason[] [was] pretextual").

## IV.    CONCLUSION

For nearly three months, Alexander took a leave of absence that was not protected by the FMLA, not supported by medical documentation, and not approved by Boeing's leave servicer. Nonetheless, when that leave expired, to hold on to her job she had to do just one thing:  show up.  Not only did Alexander not show up to work, she did not call in, and she ignored her manager's calls and messages for three days.  A manager making a six-figure salary, Alexander

---

[9] Evidence of pretext means evidence showing the employer's stated reason is "unworthy of belief."  *See Domingo v. Boeing Empls.' Credit Union*, 124 Wn. App. 71, 87-88 (2004).  That could include "(1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated by the reasons; or (3) the reasons are insufficient to motivate the adverse employment decision"; or (4) that the employee "was treated differently from similarly situated employees outside the protected class."  *Id.*

BOEING'S MOTION FOR SUMMARY
JUDGMENT (No. 2:13-cv-1369-RAJ) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL28921786.8

demonstrated a total disregard for her job and Boeing properly treated her actions as job abandonment.   That decision was reasonable and, the undisputed evidence shows, it was lawful. Boeing respectfully requests that the Court grant its motion for summary judgment as to all Alexander's claims and dismiss her complaint in its entirety.

DATED:  April 17, 2014

By:  *s/ James Sanders*

By:  *s/ Zachary P. Jones*

James Sanders #24565
Zachary P. Jones #44557
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  JSanders@perkinscoie.com
          ZJones@perkinscoie.com

Attorneys for Defendant The Boeing Company

## CERTIFICATE OF SERVICE

On April 17, 2014, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following document:

### DEFENDANT BOEING'S MOTION FOR SUMMARY JUDGMENT

Reba Weiss, WSBA #12876
Andrea Scheele, WSBA #36773
Teller & Associates
1139 34th Avenue, Suite B
Seattle, WA 98122
reba@stellerlaw.com
AndreaS@stellerlaw.com
Tel. (206) 324-8969
Fax (206) 860-3172

Attorneys for Plaintiff

| | |
|---|---|
| **___** | Via Hand Delivery |
| **___** | Via U.S. Mail, 1st Class, Postage Prepaid |
| **___** | Via Overnight Delivery |
| **___** | Via Email |
| **_X_** | Via E-filing |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 17th  day of April, 2014.

_s/ Breanne Buckley_
Breanne Buckley
Legal Secretary

CERTIFICATE OF SERVICE (No. 2:13-cv-1369-RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL28921786.8