HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JILL ALEXANDER,

Plaintiff,

v.

BOEING COMPANY,

Defendant.

CASE NO. C13-1369RAJ

ORDER

**I. INTRODUCTION**

This matter comes before the court on defendant the Boeing Company's motion for summary judgment. Dkt. # 27. Plaintiff Jill Alexander alleges causes of action for violation of the Washington Law Against Discrimination ("WLAD") for failure to accommodate, failure to engage in the interactive process, disparate treatment, and wrongful termination, and violation of the Family and Medical Leave Act ("FMLA") and the Washington Family Medical Leave Act ("WFMLA") for interference with protected medical leave and wrongful termination. Dkt. # 7. This matter may be decided on the papers submitted. Accordingly, plaintiff's request for oral argument is DENIED.

The court also DENIES plaintiff's motion to strike Jeff Plant's declaration in its entirety pursuant to Evidence Rule 408. Rule 408 provides that compromise offers and negotiations are not admissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Fed. R. Evid. 408(a). However, the court "may admit this evidence for another purpose[.]" Fed. R. Evid. 408(b). Plaintiff has not explained, and the court has not found, any assertion in Mr. Plant's declaration that is offered to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction. Dkt. # 31.

Having reviewed the memoranda, evidence, and the record herein, the court DENIES defendant's motion for summary judgment.

## II. BACKGROUND

Plaintiff was employed with Boeing from 1996 to 2013. Dkt. # 40-4 (Alexander Decl.) ¶ 2. Since at least 2000, plaintiff's managers knew that she had migraines and that she missed work due to her migraines. *Id.* ¶ 2. From approximately 2009 through 2012, plaintiff would telecommute sporadically because of her migraines, and beginning in 2012, plaintiff's migraines became more frequent. *Id.* ¶¶ 10-11. In April or May 2012, Boeing advised that employees could no longer work from home if they were sick or work partial or flexible days. *Id.* ¶ 12. In June 2012, plaintiff was advised for the first time that she could apply for FMLA leave to cover absences caused by her migraines. Dkt. # 30 (Sells Decl.) ¶ 7. Plaintiff took intermittent FMLA for the remainder of the year, but because she was no longer allowed to work partial or flexible days, her absences were far more frequent than they were before and her reviews suffered as a result. Dkt. # 40-4 (Alexander Decl.) ¶¶ 11, 18. Additionally, plaintiff was disciplined for what Boeing deemed to be "unexcused" absences. Dkt. # 40-1 at 17-18, 24-25 (Ex. A to Weiss Decl., Alexander Depo. at 85:3-86:24, 99:18-100:10); *id* at 39-40, 50 (Ex. B to Weiss Decl.,

Williams Depo. at 41:20-42:5, 50:10-16); # 40-4 (Alexander Decl.) ¶¶ 19-20, 23. Boeing terminated plaintiff's employment for "job abandonment" when she did not report to work from April 29 through May 2, 2013. Dkt. 30 (Sells Decl.) ¶¶ 18-23.

## III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### A. FMLA and WFMLA

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)). "Congress intended that these new entitlements would set 'a minimum labor standard for leave,' in the tradition of statutes such as 'the

child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.'" *Id.* "Implementing this objective, Congress made it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided' by the Act." *Id.* (citing 29 U.S.C. § 2615(a)(1)). This prohibition encompasses an employer's consideration of an employee's use of FMLA-covered leave in making adverse employment decisions. *Id.* (citing 29 C.F.R. § 825.220(c): "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies.") (emphasis omitted). A plaintiff may prove that the taking of FMLA-protected leave constituted a negative factor in the decision to terminate him or her by using direct evidence, circumstantial evidence, or both.[1] *Id.* at 1125.

To make out a prima facie case of FMLA interference, plaintiff must demonstrate that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014).

Defendant argues that plaintiff's FMLA and WFMLA claims should be dismissed because (1) there is no evidence that plaintiff's use of FMLA leave was a "negative

---

[1] This District has recognized that the WFMLA mirrors the provisions of the FMLA, and that the WFMLA must be construed in a manner that is consistent with similar provisions of the FMLA and that gives consideration to the rules, precedents, and practices of the federal department of labor relevant to the federal act. *Washburn v. Gymboree Retail Stores, Inc.*, Case No. C11-822RSL, 2012 WL 3818540, *9 (W.D. Wash. Sept. 4, 2012). Neither party has indicated a distinction between the FMLA and the WFMLA for purposes of this analysis. Accordingly, the court's discussion of plaintiff's FMLA claim applies equally to her WFMLA claim.

factor" in Boeing's decision to terminate her employment, (2) Alexander was ineligible for FMLA leave after January 1, 2013, and (3) Alexander did not provide sufficient notice of her request for FMLA leave on June 25, 2012. Dkt. # 27 at 17-18.

1. Negative Factor Evidence

Plaintiff has presented sufficient evidence that creates a genuine dispute of material fact regarding whether plaintiff's use of FMLA leave was a negative factor in Boeing's decision to terminate her. In response to whether plaintiff's absences were considered a negative factor in evaluating her work performance, Jeffrey Sells, plaintiff's direct supervisor, responded:

> It was difficult. I know in her last performance review, it was difficult to give her an adequate performance review without her being at work as much as, as often as she missed. When she was at work, she was very effective and I alluded to that in her performance review, but the fact that she did miss a lot of work did play in the fact that she wasn't as effective as she could have been just by the fact she wasn't there.

Dkt. # 40-1 at 70 (Ex. C to Weiss Decl., Sells Depo. at 66:8-17). In January 2013, plaintiff applied for FMLA leave and took what she believed to be FMLA leave January 25 through 28, 2013. Dkt. # 40-4 (Alexander Decl.) ¶¶ 21-22. On January 29, 2013, plaintiff returned to work and was informed by Sells and Rachael Williams, the human resources generalist, that her absences on January 25 through 28, 2014 were unexcused because she was not eligible for FMLA leave. *Id.* ¶ 23. Sells and Williams informed plaintiff that she would receive a five day suspension as a result of these "unexcused" absences. *Id.* On January 30, 2013, plaintiff called Williams to clarify when her suspension would begin, and Williams told her that it would begin on her first day back from leave, which was April 29, 2013. *Id.* ¶ 25.

On April 29, 2013, when plaintiff did not show up for work, Sells sought advice from Williams, who advised him to call plaintiff's cell and home phone numbers, which

he did. Dkt. # 40-1 at 80-81 (Ex. C to Weiss Decl., Sells Depo. at 83:19-84:3).[2] On May 1, 2013, at approximately 6:55 p.m., plaintiff texted Sells that she would call him the following day, which she did. Dkt. # 30 (Sells Decl.) ¶ 21; # 40-4 (Alexander Decl.) ¶ 27. On May 2, 2013, at approximately 10:00 a.m., Sells and Williams received notification that plaintiff had applied for FMLA leave for April 29 through May 3, 2013. Dkt. # 40-1 at 59-60 (Ex. B to Weiss Decl., Williams Depo. at 146:14-147:17); *id.* at 78-79 (Ex. C to Weiss Decl., Sells Depo. at 80:20-81:8); *id.* at 135 (Ex. G to Weiss Decl., TBC 1252). Despite this notification of potential FMLA-protected leave, Sells and Williams made the decision to end plaintiff's employment "for job abandonment" because she had not come in to work. Dkt. # 30 (Sells Decl.) ¶ 22. On May 3, 2013, at approximately 2:15 p.m., Sells and Williams called plaintiff and told her that her Boeing employment had ended "due to job abandonment." *Id.* ¶ 23.

Thus, there is direct evidence that Boeing's decision to terminate plaintiff was due to her absences from April 29 through May 2, 2013. However, if those absences were covered by the FMLA, Boeing's consideration of those absences as a "negative factor" in the termination decision violated the FMLA. *See Bachelder*, 259 F.3d at 1125-26 ("In the case before us, there is direct, undisputed evidence of the employer's motives: America West told Bachelder when it fired her that it based its decision on her sixteen absences since the January 1996 corrective action discussion. If those absences were, in fact, covered by the Act, America West's consideration of those absences as a 'negative factor' in the firing decision violated the Act."). Accordingly, the court must address defendant's second argument regarding plaintiff's eligibility for FMLA leave.

---

[2] Plaintiff asserts that she may have checked her voice mail on April 29, 2013, but that she did not hear Sells's message on that day. *Id.* ¶ 26. Plaintiff contends that the first time she heard a message from Sells that week was late on May 1, 2013. *Id.* Although defendant has presented evidence that plaintiff checked her voice mail on April 29, 2013, this court is not permitted to make credibility determinations. Accordingly, the court views the evidence in the light most favorable to plaintiff—that she did not hear Sells's voicemail until May 1, 2013.

2. Eligibility for FMLA Leave

Defendant argues that plaintiff was ineligible for FMLA leave beginning January 1, 2013, because she had not accrued at least 1,250 "hours of service" in the 12 months prior to the requested leave date. Dkt. # 27 (Mot.) at 19 (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)). The term "hours of service" in the FMLA follows the principles established under the Fair Labor Standards Act ("FLSA"). 29 C.F.R. § 825.110(c)(1). Under the FLSA, the employee has the burden of proving that she performed the work for which she was not compensated. *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986). In view of the remedial purpose of the FLSA and the employer's statutory obligation to keep proper records of wages, hours and other conditions and practices of employment, this burden is not to be an impossible hurdle for the employee. *Id.* at 1448.

Defendant has presented evidence that plaintiff recorded 1,203.2 total hours worked for 2012. Dkt. # 43 (Luschei Decl.) ¶ 3. Plaintiff does not dispute that she recorded 1,203.2 hours of total work for 2012. However, she contends that in order to fulfill her job responsibilities, it was necessary for her to work extra hours each day, despite the fact that they were not included in her timesheets or paychecks. Specifically, she contends that she worked at least 2.5 hours per week that were not included in her regular or overtime hours. Dkt. # 40-4 (Alexander Decl.) ¶ 8. Plaintiff testified that she usually checked her email when she got up in the morning, and before she went to bed in the evenings, which would take at least 15 minutes for the morning and 15 minutes for the evening. Dkt. # 40-1 at 33 (Ex. A to Weiss Decl., Alexander Depo. at 121:4-14). Plaintiff also testified that she would often take phone calls on the way into work or make phone calls in the evenings. *Id.* Plaintiff also contends that she received a lot of evening emails from Boeing's Japan partners that required her to respond after regular work hours, and she received requests to participate in ad hoc meetings or to set up ad hoc meetings. Dkt. # 40-4 (Alexander Decl.) ¶ 8. Plaintiff did not record the time spent doing these tasks but the work was required to do her job competently. *Id.*

Additionally, Michael Dickinson, the director of the department, had directed the managers not to claim "overtime" hours but expected them to work the additional hours anyways. *Id.* Sells, Dickinson, and other managers in plaintiff's group regularly worked additional hours over the 40 hours per week. *Id.* Plaintiff contends that the culture at Boeing was that they were not supposed to claim overtime often, but they were expected to work long hours anyways. *Id.* Williams, the Human Resources Generalist, also testified that she works outside of the scheduled hours without recording the time into the system. Dkt. # 29 (Williams Decl.) ¶ 2; # 40-1 at 62 (Ex. B to Weiss Decl., Williams Depo. at 158:17-20). She testified that she usually works between five to ten hours per week extra before she puts in for overtime. *Id.* at 62-63 (Williams Depo. at 158:21-159:6). The fact that a human resources employee admits to working between five and ten hours a week off the clock before reporting overtime corroborates plaintiff's claim of Boeing's culture and expectation that managers regularly work additional hours without recording their time. The court finds that, taken together, this evidence is sufficient to create a genuine issue of material fact regarding the amount and extent of plaintiff's work as a matter of just and reasonable inference. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *partially superseded by statute on other grounds as described in IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005).

Plaintiff's estimate that she works at least fifteen minutes in the morning and fifteen minutes in the evening every day would result in the 2.5 hours per week she estimates as additional hours worked that were not recorded by Boeing. Additionally, the court has reviewed the total days that plaintiff actually worked in 2012 (Dkt. # 33-2 at 52-63 (Ex. G to Jones Decl.)), and calculates that plaintiff worked a total of 145 days, or twenty-nine five-day work weeks. Thus, by plaintiff's estimation, and the court's calculation, plaintiff worked an extra 72.5 hours that were not recorded by Boeing. If a

jury were to credit this evidence, plaintiff would have 1,275.7 "hours of service," which exceeds the 1,250 threshold to be eligible for FMLA leave.[3]

Questions of material fact also exist with respect to whether Boeing knew or had reason to know that plaintiff was performing unreported work given plaintiff's testimony regarding the culture at Boeing, plaintiff's testimony that Dickinson had directed the managers not to claim overtime hours often, Williams's testimony regarding her own practices of working additional hours without reporting overtime, and evidence that Sells and Dickinson also worked hours in excess of 40 hours per week without reporting all of the excess hours.

Accordingly, the court finds that genuine disputes of material fact exist with respect to whether plaintiff was eligible for FMLA leave beginning in January 2013.[4]

3. Sufficiency of Notice

Plaintiff's interference claim also arises out of a written warning she received for her allegedly unexcused absence on June 25, 2012. Defendant argues that Alexander did not provide Boeing notice as soon as practicable of her need for leave on June 25, that Alexander's failure to provide Boeing notice within two days violated Boeing's policy, and, that Boeing could therefore count the June 25 absence as an unexcused absence. Dkt. # 27 at 23. Plaintiff contends that she did not have sufficient notice of Boeing's

---

[3] The court rejects plaintiff's alternative argument that at least one document produced by Boeing reflects that plaintiff worked 1813.8 hours. Dkt. # 40 at 17 (citing Ex. G to Weiss Decl., TBC 0430). It is undisputed that the document referenced shows the total amount plaintiff was paid, which included holidays, sick leave and vacation, not the total amount plaintiff worked. Dkt. # 43 (2d Luschei Decl.) ¶ 3, Ex. G.

[4] The cases cited by defendant from other jurisdictions are not binding on this court. In any event, the court believes that the circumstances of this case are more similar to the circumstances in *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 716-17 (2d Cir. 2001) than to the circumstances in *McArdle v. Town of Dracut*, 732 F.3d 29, 34 (1st Cir. 2013), *Staunch v. Continental Airlines*, 511 F.3d 625, 630 (6th Cir. 2008), and *Arenas-Grube v. Menasha Joint Sch. Dist.*, Case No. C10-809, 2010 WL 5300194, *1 (E.D. Wis. Dec. 20, 2010). Dkt. # 27 (Mot.) at 20; # 41 (Reply) at 10.

policy that she had to initiate a request for FMLA leave within two business days after the start of the leave.

For unforeseeable[5] FMLA leave, the regulations in effect in 2012 provided that "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." 29 C.F.R. § 825.303(a) (West 2009).[6] With respect to the content of the notice, the employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(b).

Additionally, "in order for the onset of an employee's FMLA leave to be delayed due to lack of required notice, it must be clear that the employee had actual notice of the FMLA notice requirements." *Id.* § 825.304(a). "This condition would be satisfied by the employer's proper posting of the required notice at the worksite where the employee is employed and the employer's provision of the required notice in either an employee handbook or employee distribution, as required by § 825.300." *Id.* Section 825.300(a) requires an employer to post and keep posted a general notice explaining FMLA provisions and providing information concerning the procedures for filing complaints of violations of the FMLA. However, different notice requirements exist with respect to eligibility and rights and responsibilities notice. "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating

---

[5] Defendant has not presented any evidence that plaintiff's migraines were foreseeable or otherwise predictable such that she could provide advance notice.

[6] The court has used the applicable version of the regulations that were in effect in 2012. The Department of Labor amended the regulations in 2013.

circumstances." *Id.* § 825.300(b)(1). Notification of eligibility may be oral or in writing. *Id.* § 825.300(b)(2). The rights and responsibilities notice requires employers to provide written notice detailing the specific expectations and obligations of the employee and explaining consequences of failure to meet such obligations. *Id.* § 825.300(c)(1). This notice must be provided to the employee each time the eligibility notice is provided. *Id.* "The notice of rights and responsibilities may be distributed electronically so long as it otherwise meets the requirements of this section." *Id.* § 825.300(c)(6).

By June 20, 2012, plaintiff had exhausted her sick and vacation leave, and plaintiff had informed Sells that she suffered from migraine headaches and that was the reason she was missing so much time. Dkt. # 30 (Sells Decl.) ¶ 5. Sells then met with the Boeing human resources generalist, who suggested meeting with plaintiff to talk about her attendance. *Id.* ¶ 6. On June 21, 2012, Sells, the human resources generalist, and Dickinson met with plaintiff to discuss her attendance, and the human resources generalist advised plaintiff to contact TotalAccess to see whether she might be able to cover future absences with FMLA leave. *Id.* ¶ 7. The following week, plaintiff missed work from June 25 through June 27, 2012. *Id.* ¶ 8. Sells received notification from Aetna on June 28 that plaintiff had requested FMLA leave for the prior three days, and that Aetna had approved the leave request for June 26 and June 27, but denied it for June 25 as untimely because she had not requested leave within 48 hours. *Id.*

The parties have not provided any evidence with respect to whether Boeing provided plaintiff with written notice of her rights and responsibilities within five days of the June 21, 2012 meeting. Rather, Boeing contends that it published the two-day rule in its leave of absence policy handbook which was available to all employees on Boeing's intranet. Dkt. # 41 (Reply) at 8. It is undisputed that the two day rule is in Boeing's leave of absence policy handbook. Dkt. # 29 at 20 (Ex. C to Williams Decl., TBC 0769, § 7.3). It is also undisputed that the handbook is available to all employees on Boeing's intranet through a hyperlink. Dkt. # 42 at 21-22 (Ex. B to Sanders Decl., Miller Depo. at

41:12-42:7). While simply "posting" a hyperlink to the FMLA leave policy may satisfy the general notice requirement under section 825.300(a), defendant has not demonstrated as a matter of law that simply "posting" a link to the policy satisfies the rights and responsibilities notice under section 825.300(c). Indeed, the term "distributed electronically" is different from the term "posted," and indicates that something more is required for the rights and responsibilities notice than simply posting the policy on a website.[7] *Compare* 825.300(c)(6) *with* 825.300(a). Finally, plaintiff contends that she contacted Sells on the morning of June 25, 2012, and informed him that she would be absent that day due to a migraine. Dkt. # 40-4 (Alexander Decl.) ¶ 19. The parties have not addressed whether this notice was sufficient to comply with section 825.303(a), such that Boeing could reasonably determine whether the FMLA may apply to the leave request that would trigger the eligibility and rights and responsibilities notice under 825.300(b) & (c), to the extent that the notice requirements were not triggered by the June 21, 2012 meeting.

The court finds that there is a genuine dispute of material fact regarding whether plaintiff had sufficient notice of Boeing's policy that employees must provide TotalAccess notice within two business days after the start of the absence.

**B. WLAD**

The WLAD makes it unlawful for an employer to refuse to hire, discharge, or discriminate in compensation based on a person's sensory, mental, or physical disability. *Riehl v. Foodmaker, Inc.*, 152 Wn. 2d 138, 144-45, 94 P.3d 930 (Wn. 2004); RCW 49.60.180. A disabled employee has a cause of action for at least two different types of discrimination: (1) failure to accommodate where the employer failed to take steps reasonably necessary to accommodate the employee's condition, and (2) disparate

[7] The parties have not directed the court to evidence regarding whether the employee handbook containing the FMLA leave policy was distributed to plaintiff prior to June 25, 2012.

treatment if the employer discriminated against the employee because of her condition. *Id.* at 145.

1. Failure to Accommodate

To establish a prima facie case for failure to accommodate, the employee must show that (1) she had a sensory, mental, or physical abnormality that substantially limited her ability to perform the job, (2) the employee was qualified to perform the essential functions of the job, (3) the employee gave the employer notice of the abnormality and its accompanying limitations, and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Id.* Additionally, the employer need not provide the accommodation if it would be an undue hardship on the employer. *Id.*

Defendant argues that the court should enter summary judgment on plaintiff's reasonable accommodation claim because plaintiff does not meet the second and fourth elements because (1) "her migraines prevented her from maintaining regular and predictable attendance, which was an 'essential function' of her job;" [8] (2) there is no evidence that any reasonable accommodation of the migraine condition was possible, and (3) Boeing engaged in the interactive process and offered several reasonable accommodations of her migraine headaches. Dkt. # 27 (Mot.) at 24.

*a. Essential Functions of Job*

"The term 'essential functions' is derived from the WLAD's federal counterpart, the Americans with Disabilities Act (ADA), and it has been defined in the regulations of the federal Equal Employment Opportunity Commission (EEOC) as follows: 'The term essential functions means the *fundamental job duties* of the employment position the

---

[8] In reply, defendant argues that plaintiff's job required her to maintain a regular and predictable work schedule, from any location, rather than maintain a physical presence for attendance. Dkt. # 41 at 12.

individual with a disability holds or desires. . . .'" *Davis v. Microsoft Corp.*, 149 Wn. 2d 521, 533, 70 P.3d 126 (Wn. 2003) (emphasis in original).[9] "Properly understood, an 'essential function' is a job duty that is fundamental, basic, necessary and indispensable to filling a particular position, as opposed to a marginal duty divorced from the essence or substance of the job." *Id.* The term includes the tasks and activities that are indispensable to the job, as well as the conduct and service required of the employee. *Id.* Thus, some courts have recognized that job presence or attendance may be an essential job function. *Id.*; *but cf Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 n.11 (9th Cir. 2001) ("although excessive or unscheduled absences may prevent an employee from performing the essential functions of his job and thereby render him not otherwise qualified for purposes of the ADA, regular and predictable attendance is not per se an essential function of all jobs.").

Additionally, a disabled employee who can perform the essential functions of her job with a reasonable accommodation is entitled to that accommodation. *See Davis*, 149 Wn. 2d at 533 n.5 ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.") (emphasis omitted); WAC 162-22-020(3) ("able worker with a disability" is a person whose disability does not prevent the proper performance, with or without reasonable accommodation, of the particular job in question); WAC 162-22-025(2) (unfair practice to fail or refuse to make reasonable accommodation for an able worker with a disability unless doing so would impose undue hardship). Although plaintiff retains the burden of proof in making her prima facie case, Boeing has the burden of production in establishing what job functions are essential. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d

[9] Washington courts have looked to federal cases interpreting the American with Disabilities Act ("ADA") for guidance in interpreting the WLAD. *Id.* at 534.

1233, 1237 (9th Cir. 2012). To meet its burden of production, defendant must produce admissible evidence that, if credited by the trier of fact, would support a finding that the function at issue is essential. *Id.*

According to plaintiff's job description, her position involves managing employees, working closely with partners and suppliers, and employee development. Dkt. # 32 at 27 (Ex. E to Luschei Decl.). The position "requires the ability to find creative solutions to supplier management issues impacting development, design, qualification, schedule and Condition of Assembly"; requires an in-depth knowledge of Supplier Management procurement policies, procedures, and best practices as well as basic understanding of various contract terms and conditions; and requires strong communication skills, a proven ability to work well in a team, and the ability to operate with minimal direction and handle a fast-paced environment. *Id.*

Sells confirms that plaintiff's position required her to coordinate suppliers, schedulers, engineers, and others to ensure that each part shipped when it was supposed to arrive at final assembly on time. Dkt. # 30 (Sells Decl.) ¶ 4. Boeing's suppliers included companies in the United States, Japan, Korea, France, Austria, and Australia. *Id.* ¶ 3. Additionally, procurement managers, like plaintiff, must troubleshoot any number of problems that suddenly arise, such as issues with the product, cost increases, delivery delays, and quality control. *Id.* ¶ 4. Procurement agents, Boeing's operations teams, and its suppliers and other partners all rely on procurement managers to exercise day-to-day oversight and act as a reliable intermediary. *Id.* Thus, according to Sells, regular and predictable attendance is a necessary part of the procurement manager's job. *Id.*

As Boeing appears to concede in reply, however, the vast majority of plaintiff's job requirement is accomplished over the computer and phone, which does not require a physical presence in the office or face-to-face contact. Dkt. # 40-4 (Alexander Decl.) ¶

14.[10] Indeed, in the past, plaintiff had successfully telecommuted and worked from home during migraine episodes, and received positive performance reviews.[11] *Id.* ¶¶ 11, 13. Alexander concedes that a migraine could last from a few hours to a few days, and during the worst parts of a migraine she is unable to work. *Id.* ¶ 5, 11. However, when the migraine is easing off, she is able to work, make phone calls, and talk on the phone. *Id.* ¶ 6, 11. When Alexander was permitted to work flexible hours or partial days, she was able to work from home once the migraine subsided. *Id.* ¶ 11. However, in April or May 2012, Dickinson advised that they were no longer permitted to work from home on a day they were sick, and they were not permitted to use flex-time or work partial days without preapproval.[12] *Id.* ¶ 12. Once flex-time and partial days were removed, Alexander had to take more days off due to her migraines, causing her reviews to suffer. *Id.* ¶ 11, 18.[13]

While maintaining a regular and predictable work schedule (as opposed to physical presence) may be an essential function of plaintiff's job, there is a genuine dispute of material fact regarding whether plaintiff could perform this essential function had she been provided a reasonable accommodation of flexible or partial days that had been successful in the past. *See* WAC 162-22065(2)(a) (adjusting work schedule is an example of a reasonable accommodation); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d

---

[10] The court notes that plaintiff testified that she agreed that her job required regular, predictable attendance, and that she "needed to be reliable and be there every day and be counted upon" because it was "a necessary part to any job." Dkt. # 33-1 at 21-22 (Ex. A to Weiss Decl., Alexander Depo. at 88:23-89:14). However, whether or not that "attendance" was in the form of physical presence or online and telecommute presence, and whether that "attendance" could be accomplished by flexible and partial days is a question of fact that must be resolved by the jury.

[11] Other employees were allowed to work partial work days due to medical issues as well as work from home. Dkt. # 40-1 at 44 (Ex. B to Weiss Decl., Williams Depo. at 68:14-22).

[12] Plaintiff concedes that flexible days and partial days were available if it was preapproved, but the nature of migraines was such that she could not predict when they would occur and therefore could not get preapproval. Dkt. # 42 at 9 (Ex. A to Sanders Decl., Alexander Depo. at 102:8-24).

[13] Plaintiff's testimony is consistent with her declaration regarding her migraines and the potential for partial or flexible work day accommodation. Dkt. # 40-1 at 19-23) (Ex. A to Weiss Decl., Alexander Depo. at 89:20-92:7, 94:17-24).

869, 879 (9th Cir. 1989) ("As long as a reasonable accommodation available to the employer could have plausibly enabled a [disabled] employee to adequately perform his job, an employer is liable for failing to attempt that accommodation."); *Pulcino v. Fed. Express Corp.*, 141 Wn. 2d. 629, 644, 9 P.3d 787 (Wn. 2000) (whether an employer made reasonable accommodation or whether the employee's request placed an undue burden[14] on the employer are questions of fact for the jury), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn. 2d 214, 219 n.3, 137 P.3d 844 (Wn. 2006), *superseded by statute on other grounds as stated in Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn. 2d 494, 498, 198 P.3d 1021 (Wn. 2009).

*b. Interactive Process and Reasonable Accommodations*

Boeing argues that a failure to engage in the interactive process is not a free-standing claim absent the possibility of reasonable accommodation, and that it did engage plaintiff in the interactive process and offered her numerous reasonable accommodations. Dkt. # 27 at 26.

Washington courts, like federal courts, do not recognize a free-standing interactive process claim absent a possibility of accommodation as a basis of a disability discrimination claim. *See Fey v. State*, 174 Wn. App. 435, 453, 300 P.3d 435 (Wn. App. 2013) ("A failure to engage in an interactive process does not form the basis of a disability discrimination claim in the absence of evidence that accommodation was possible."). Nevertheless, plaintiff has presented sufficient evidence that reasonable accommodations in the form of flex-days or partial days would have allowed her to perform her job. Accordingly, plaintiff may pursue her failure to engage in the interactive process theory.

---

[14] Boeing has not presented any evidence that allowing plaintiff to work partial days or with a flexible schedule would be an undue burden.

With respect to the interactive process, as indicated above, plaintiff has presented sufficient evidence to demonstrate that a flexible schedule or partial days would have been a reasonable accommodation, and that Boeing eliminated this accommodation, which had previously been successful. Thus, the question of whether Boeing failed to engage in the interactive process with respect to flexible or partial work days is a question reserved for the jury.[15] *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1117 (9th Cir. 2000) (defendant's " failure to engage in the interactive process foreclosed at least one potentially reasonable accommodation."), *vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 407 (2002) (Stevens, J., concurring) ("The Court of Appeals also correctly held that there was a triable issue of fact precluding the entry of summary judgment with respect to whether petitioner violated the statute by failing to engage in an interactive process concerning respondent's three proposed accommodations. [*Barnett*,] 228 F.3d 1105, 1117 (C.A.9 2000) (en banc). This latter holding is untouched by the Court's opinion today.").

2. Disparate Treatment Discrimination

The WLAD prohibits employers from discharging or discriminating against any person in the terms or conditions of employment because of, *inter alia*, "the presence of any sensory, mental, or physical disability . . . ." RCW 49.60.180(2) & (3). A plaintiff may prove her claim for disparate treatment discrimination by either offering direct evidence of discriminatory intent or by satisfying the *McDonnell Douglas* burden-shifting test that gives rise to an inference of discrimination.

---

[15] Defendant has presented evidence that after April or May 2012, Sells allowed plaintiff to use partial days without preapproval on at least two occasions. Dkt. # 42 at 10-12 (Ex. A to Sanders Decl., Alexander Depo. at 103:3-105:19). However, plaintiff also testified this was not a normal occurrence, and she only attempted the two requests for partial days without preapproval after other people were allowed to do it. *Id.* at 12 (Alexander Depo. at 105:7-19). Accordingly, whether plaintiff was able to use partial days without preapproval as an accommodation for her migraines is a material, factual issue properly reserved for the jury.

To establish a prima facie case of discrimination by direct evidence, a plaintiff must provide direct evidence that (1) the defendant acted with a discriminatory motive and (2) the discriminatory motivation was a significant or substantial factor in an employment decision. *Kastanis v. Educ. Emps. Credit Union*, 122 Wn. 2d 483, 491, 859 P.2d 26 (Wn. 1993).

Defendant argues that there is no direct evidence of animus.[16] Dkt. # 27 (Mot.) at 28. The court disagrees.

The Washington Supreme Court has held that "[c]onduct resulting from the disability (e.g., decrease in performance) is part of the disability and not a separate basis for termination." *Riehl*, 152 Wn. 2d at 152. Here, plaintiff has presented evidence that the majority of her absences were because of her migraines. Dkt. # 40-4 (Alexander Decl.) ¶¶ 9, 11, 19, 21-23. Plaintiff's supervisors and human resources knew about her migraines and knew that they were the cause of most of her absences. Dkt. # 30 (Sells Decl.) ¶¶ 2, 5-7, 13-14. Sells testified that "it was difficult to give plaintiff an adequate performance review without her being at work as much as, as often as she missed" and "the fact that she did miss a lot of work did play into the fact that she wasn't as effective as she could have been just by the fact she wasn't there." Dkt. # 40-1 at 70 (Ex. C to Weiss Decl., Sells Depo. at 66: 8-17). Additionally, Boeing issued plaintiff a corrective action memorandum, informed her that she would be suspended without pay for five days because of "unexcused" absences that were caused by her migraines, and suggested that she step out of management because of her absences. Dkt. # 40-1 at 17-18, 24-25 (Ex. A to Weiss Decl., Alexander Depo. at 85:3-86:24, 99:18-100:10); *id* at 39-40, 50 (Ex. B to Weiss Decl., Williams Depo. at 41:20-42:5, 50:10-16); # 40-4 (Alexander Decl.) ¶¶ 19, 23. Finally, Sells and Williams terminated plaintiff's employment for "job

[16] Since defendant has not challenged the second prong, the court has only addressed whether there is direct evidence of discriminatory motive.

abandonment" after they had received notification that she requested FMLA leave. Dkt. # 40-1 at 59-60 (Ex. B to Weiss Decl., Williams Depo. at 146:14-147:17); *id.* at 78-79 (Ex. C to Weiss Decl., Sells Depo. at 80:20-81:8); *id.* at 135 (Ex. G to Weiss Decl., TBC 1252).

This is direct evidence that Boeing's discipline and termination were because of plaintiff's absenteeism, which resulted from her migraines.[17] *Riehl*, 152 Wn. 2d at 152. The court finds that plaintiff has presented sufficient evidence that creates a triable issue of fact regarding whether Boeing's discipline and termination for plaintiff's absenteeism (conduct resulting from her migraines) demonstrates discriminatory motive. Since plaintiff has provided direct evidence of discriminatory animus that creates a genuine dispute of material fact, the court need not analyze whether plaintiff has also established a prima facie case under *McDonnell Douglas.*

## IV. CONCLUSION

For all the foregoing reasons, the court DENIES defendant's motion for summary judgment.

Dated this 28th day of July, 2014.

The Honorable Richard A. Jones
United States District Judge

[17] Defendant does not dispute that plaintiff's migraines constitute a disability.