THE HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| JILL ALEXANDER, an individual,<br><br>        Plaintiff,<br><br>   vs.<br><br>THE BOEING COMPANY, a corporation doing business in the State of Washington,<br><br>        Defendant. | NO.  2:13-CV-01369<br><br>**PLAINTIFF'S INITIAL MOTIONS IN LIMINE**<br><br>**Noted for Motions Calendar: August 18, 2014**<br><br>**[Oral Argument Requested]** |

COMES NOW the Plaintiff Jill Alexander, by and through her attorneys Reba Weiss and Andrea Scheele, of Teller & Associates, PLLC, and hereby moves the Court to enter an order before selection of the jury, instructing the Defendant, its attorneys, and witnesses not to directly or indirectly mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner any of the matters indicated below without first obtaining the permission of the Court outside the presence and hearing of the jury and further instructing defense counsel to warn and caution his clients and each and every witness to strictly follow any order entered by the Court in connection with this motion.

## I.  RELIEF REQUESTED

Plaintiff requests that the court exclude evidence as described in the paragraphs below. A proposed "checklist" formatted Order accompanies this Motion.

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

## II. STATEMENT OF CLAIMS

This is an employment discrimination and retaliation case. Plaintiff was terminated from the Boeing Company (Boeing) after seventeen years of employment, in retaliation for taking protected leave to deal with her disability and serious health condition, intractable migraine headaches. Boeing repeatedly disciplined and threatened Plaintiff with discipline for taking protected leave, and effective accommodations were revoked without being replaced. . Plaintiff sued for disability discrimination, wrongful termination, and failure to accommodate her disability under the Washington Law Against Discrimination (WLAD), and interference and discrimination under the Washington Family and Medical Leave Act (WFMLA) and the Family and Medical Leave Act (FMLA).

## III. ARGUMENT

**A. Motions to Exclude Evidence**

**1) Exclude testimony and other evidence that Plaintiff declined to participate in Boeing's Alternative Dispute Resolution ("ADR") process.**

Defendant has alleged the affirmative defense of "failure to mitigate damages". Defendant seeks to admit evidence to prove that a manager at Boeing, Jeff Plant, spoke with Plaintiff after her termination and encouraged her to attend the ADR process. Her notes from those conversations reflect that he told her, "Sells agreed ok for Plant to have me." Mr. Plant allegedly told Plaintiff that he was confident that Plaintiff's former manager, Jeff Sells, and he could "work out differences". He told Plaintiff that he was "very sure things can be brought together" and that Plaintiff's "destiny was in her hands". He further told Plaintiff to "get her ass back to the ADR process". Scheele Decl., (JA 599-600, Def. Exhibit 184).

Based upon this conversation, which is replete with hearsay, Defendant claims that it *would have* offered Plaintiff a job had she attended the ADR process and that therefore she

PLAINTIFFS′ INITIAL MOTIONS IN
LIMINE - 2

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969 Fax: 860-3172

failed to mitigate her damages when she did not attend ADR. Defendant does not, and cannot, claim that it *actually* offered Plaintiff a job and that she refused that job, because it did *not offer her a job* after her termination. Moreover, the purpose of the ADR process would appear to be dispute resolution. Presumably this hypothetical offer would have been made to resolve the claim, and therefore is not an unconditional offer of return to work after Plaintiff's termination. If it had been an unconditional offer, Boeing should have made clear that it was making an unconditional offer of reinstatement or of some other job. No such offer was made.

Defendant has listed Jeff Plant as a witness in this case. Mr. Plant should not be permitted to testify, and all evidence regarding ADR should be excluded, because Defendant never offered Plaintiff a job after her termination and thus, the evidence is unfairly prejudicial, outweighing any possible probity it might have. ER 403. Likewise, Plaintiff's notes regarding her conversation(s) with Mr. Plant should be excluded. Scheele Decl., (JA 599-600, Def. Exhibit 184).

Boeing requires participants in its ADR process sign a confidentiality agreement that all statements and written materials made or prepared by the parties during the course of ADR are "privileged settlement discussions, and they are non-discoverable and inadmissible for any purpose in any administrative, arbitral, judicial, or other proceeding." Scheele Decl., Ex. A , TBC 1332. It warns that " No aspect of the Resolution Advocate's efforts to bring about a resolution of the dispute shall be relied upon or introduced as evidence in any [legal] proceeding, including (a) views expressed or suggestions made by a party with respect to a possible settlement of the dispute, (b) admissions […] and , (c) proposals made or views expressed […]". *Id.*. This document proves Boeing's intention to have the entire ADR process privileged. The Court should exclude all evidence of Plaintiff's participation or non-participation in the ADR process as it falls directly under Fed. R. Evid. 408. Defendant's own

policy excludes facts about the ADR process from being admitted in "any judicial proceeding" and the Court should exclude the evidence on this basis as well.  *Id.*

Fed. R. Evid. 408 states in pertinent part:

**(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

**(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

**(2)** conduct or a statement made during compromise negotiations about the claim ….

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Mr. Plant's testimony and any other evidence regarding the ADR process should also be excluded because it is precisely the kind of evidence that Fed. R. Evid. 408 was designed to exclude.  In *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826-27 (2d Cir. 1992), the plaintiff brought an action for age discrimination.  Defendant sought to introduce evidence that it had offered Plaintiff a job in support of its defense of failure to mitigate damages.  The Court excluded the evidence finding that it was precisely the kind of evidence Fed. R. Evid. 408 prohibits.  "Evidence that demonstrates a failure to mitigate damages goes to the "amount" of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408."  *Id.*

Here, no job offer was actually made to Plaintiff, but Boeing will attempt to admit evidence that Plaintiff failed to mitigate her damages by engaging in Boeing's ADR process, and suggest that she would be less damaged now, if she had done so. That implies that an offer would have been made, or that an offer was forthcoming.  If a job offer *had* been made in

compromise of a disputed claim during the ADR process, it would be excluded pursuant to ER 408. Evidence that an offer *might have* been made *if* Plaintiff had attended ADR is not relevant and far too speculative to be allowed. Fed. R. Evid. 402, 602. It is unfairly prejudicial and its probative value is outweighed by its prejudice. Fed. R. Evid. 403. "[W]hen the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers." *Bradbury v. Phillips Petroleum Co.*, 889 F.2d 1457, 1461 (5th Cir. 1989)(although admissible for impeachment purposes, evidence excluded under Fed. R. Evid. 403). The conversation between Plaintiff and Mr. Plant is replete with hearsay and should be excluded on that basis as well. Fed. R. Evid. 802.

The Court should exclude Boeing's proposed Exhibits 123, 125, 147, 184, and any other reference to Boeing's ADR process, including the testimony of Jeff Plant which pertains exclusively to the ADR process.[1]

2) **Exclude reference to Plaintiff's mental health, medical treatment and medical history that predated the filing of this lawsuit by more than five years.**

The Court should exclude evidence related to Plaintiff's mental health and other medical records or treatment prior to five years before the filing of this lawsuit because it is not relevant to the claims or defenses (Fed. R. Evid. 402). It is unfairly prejudicial, while the probative value is low (Fed. R. Evid. 403). Before 2008, Plaintiff performed her job so well that she received good reviews and a promotion in 2011. Old medical problems have little relevance and great potential for unfair prejudice. Defendant's Proposed Exhibits, as enumerated below, should be excluded, or redacted.

A. <u>The Court ruled this evidence was not discoverable.</u>

---

[1] The exhibits to Ms. Scheele's Declaration are organized as Exhibit A, B, etc., which are documents not offered by Defendant, but used to support this Motion, followed by the relevant numerically organized Defendant's Proposed Exhibits for the Court's reference.

PLAINTIFFS' INITIAL MOTIONS IN
LIMINE - 5

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

On October 18, 2013, this Court entered an order prohibiting Defendant from obtaining discovery of any records of mental health treatment dated prior to July 24, 2008, five years prior to the filing of this lawsuit. Dkt. 20 (Order on Plaintiff's Motion for Protective Order). In response to Plaintiff's Motion for Protective Order, which sought a five year limitation on discoverability, Defendant argued it was entitled to discovery (from any source) about events that had caused her to seek mental health treatment nearly ten years prior, without any evidence that Plaintiff's migraine headaches in 2012 and 2013 were caused by those decade-old events. The Court denied Boeing's request, and wrote that, **"Boeing is free to speculate that her more recent absences from work have the same causes, but on this record, that is ungrounded speculation. Boeing points to no current evidence that Ms. Alexander is suffering from a mental health condition. It does not contest that she has not received mental health treatment in at least five years. It offers no opinion from a qualified medical professional that there is reason to suspect a current or recent mental health condition. The supposition of lawyers is no substitute for medical opinion."** Dkt. 20 (Order on Plaintiff's Motion for Protective Order)(emphasis supplied).

The facts have not changed since the entry of the above-referenced Order. Defendant has offered no additional evidence that Plaintiff received treatment for a mental health condition during the relevant timeframe, or even within the last five years. Evidence is admissible only if it is relevant; evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992) ("For evidence to be relevant it must be probative of the proposition it is offered to prove, and . . . the proposition to be proved must be one that is of consequence to the determination of the action") (internal quotation marks and citations omitted). Medical evidence pre-dating five years is not relevant and thus not admissible. Fed. R. Evid. 402.

PLAINTIFFS' INITIAL MOTIONS IN
LIMINE - 6

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

B.  A cutoff date of five years, prior to July 24, 2008, is reasonable.

Most of the relevant events occurred in 2012 and 2013, after Plaintiff's 2011 promotion to Manager.  Neither party has placed Plaintiff's mental health history at issue in this case. Plaintiff alleges Boeing discriminated against her because of her disability, her need for reasonable accommodation, and use of protected leave related to her serious health condition (*see* Dkt. 7, Amended Complaint).  Defendant argues it disciplined Plaintiff in 2013 because she failed to comply with Boeing's attendance policies (*see* Dkt. 9 at ¶13, 17, Answer) and terminated her employment because she failed to return to work. *See* Dkt. 9 at ¶26.

Boeing has never claimed that Plaintiff's mental health history justified its decisions to discipline or terminate her, nor have its witnesses testified that her mental health history had any impact on its decisions to discipline her. *See* Dkt. 29 at ¶7, 12 (Decl. of Rachael Williams in support of Boeing's Motion for Summary Judgment) and Dkt. 30 at ¶8, 14, 22 (Decl. of Jeff Sells in support of Boeing's Motion for Summary Judgment). Thus, evidence of Plaintiff's mental health treatment prior to July 24, 2008, has no bearing on the key questions the jury must decide.

Defendant may argue that Plaintiff's long-ago medical history is relevant to her emotional distress, but this argument fails.  Whatever long-ago conditions she suffered from were either resolved or stable at the time of these events and have no bearing on either liability or damages.  "Plaintiff's emotional distress claim does not, however, give [Defendant] an unfettered right to pursue discovery into Plaintiff's entire medical history."   *Walker v. Nw. Airlines Corp.*, CIV.00-2604 MJD/JGL, 2002 WL 32539635 (D. Minn. Oct. 28, 2002).

C.  Old medical records will be a distraction to the jury, unfairly prejudicial with little probative value, and lack relevance.

Evidence of medical history and treatment that Plaintiff seeks to exclude covers the following topics: an eating disorder from which Plaintiff suffered in her teens and twenties, bipolar disorder, PTSD related to a person who was convicted of stalking her in 2004, anxiety

and depression that flowed from that stalking incident and a fire at her home around the same time, use of alcohol, cigarettes, or illegal drugs during adolescence, her families' medical histories and Reactive Airway Disease/asthma during childhood. Many exhibits, including those numbered Defendant's Proposed Exhibit 161 (TBC 0141-157) should be excluded for the above reasons as well as their cumulative nature. Relevant medical evidence of her migraine treatment during the past five years, such as that contained in Proposed Exhs. 133, 165, 170, 171 and 174, should be redacted for these conditions: Reactive Airway Disease, Depression, and Eating Disorder. Plaintiff's family history is irrelevant and more prejudicial than probative, and should also be redacted.

None of the above-described medical conditions or treatments is relevant to Plaintiff's claims and/or Defendant's defenses, and the evidence is likely to cause unfair prejudice against Plaintiff. Further, the evidence could be a significant distraction to Ms. Alexander's well documented migraine headache condition that is the subject of this trial. Plaintiff does not object to the admission of evidence related to her migraines or treatment of migraines, unless the evidence is unnecessarily cumulative or consists of other, irrelevant medical conditions, as described above.

**3) Exclude evidence related to non-employment collateral sources of income (short-term and long-term disability benefits, and unemployment insurance benefits).**

The Court should prohibit Defendant from introducing evidence regarding Short or Long Term Disability applications, determinations, findings, decisions, or benefits paid, and any unemployment insurance application or benefits paid.

A. The evidence should be excluded because it is related to collateral sources of income and has no other relevance.

In the course of discovery, Defendant obtained documents relating to the Plaintiff's receipt of i) unemployment benefits after her employment ended, and ii) short term disability benefits paid in 2012 while she was on FMLA leave. Both of these types of payments are

PLAINTIFFS' INITIAL MOTIONS IN
LIMINE - 8

Teller & Associates
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

collateral sources of benefits for which Defendant is not legally entitled to benefit by reduction of Plaintiffs' damages award. The collateral source rule provides that a tortfeasor may not reduce its liability due to payments received by the injured party from a collateral source. *Maziarski v. Bair*, 83 Wn. App. 835 (1996), *Ciminski v. SCI Corp*., 90 Wn.2d 802, 804, 585 P.2d 1182 (1978); *Stone v. City of Seattle*, 64 Wn.2d 166, 172, 391 P.2d 179 (1964). It applies when payment comes from a source independent of the tortfeasor, *Ciminski*, 90 Wn.2d at 804, *Bliss v. City of Newport*, 58 Wn. App. 238, 241 n.2, 792 P.2d 184 (1990); *Lange v. Raef*, 34 Wn. App. 701, 704, 664 P.2d 1274 (1983), but not when payment comes from the tortfeasor or a fund created by the tortfeasor. *Lange*, 34 Wn. App. at 704; David K. DeWolf & Keller W. Allen, Tort Law and Practice, 16 WASHINGTON PRACTICE § 4.42, at 96 (1993). Any reference to Plaintiffs' receipt of i) unemployment compensation benefits and ii) short-term disability benefits in 2012 is entirely irrelevant to this litigation and should be excluded.[2]

     B. <u>Evidence of disability benefit denial would be unfairly prejudicial and confusing.</u>

     The jury must determine whether Plaintiff was a qualified individual with a disability who required reasonable accommodation under the WLAD, and whether she suffered from a serious health condition under the FMLA/WFMLA. Because these issues are pivotal to the outcome of this trial, any other determination stating that Plaintiff is, or is not, "disabled" under a different statutory definition and standard would only confuse or mislead the jury. Fed. R. Evid. 403. This confusion would outweigh any probative value. The Court should grant Plaintiff's motion to exclude evidence related to any application for disability benefits, or any third party's insurance-related or benefit-related disability determinations at trial. Such ruling will also further Washington's "rule of strict exclusion of evidence of collateral benefits." See *Sutton v. Shufelberger*, 31 Wn. App. 579, 583, 643 P.2d 920 (1982).

---

[2] Disability benefits offered through an ERISA plan must be a collateral source because the ERISA plan is by definition a separate entity from Boeing. *Xieng v. Peoples National Bank of Washington*, 120 Wn.2d 512, 524, 844 P.2d 389 (1993)(other federal citations omitted)

Any probative value the evidence might have is also outweighed by the prejudice and confusion that will result if the jury learns that some of Plaintiff's applications for disability benefits were denied. The admission of this denial would necessitate a time-wasting mini-trial on the basis of the denial, and would require explanation of different and potentially confusing standards of the same critical word, i.e., "disabled." Exhibit 136 is especially problematic, because it includes hearsay statements by a physician hired to review Plaintiff's medical records but not to examine her, and that physician made a determination that her medical records did not support a finding that she should be awarded disability benefits in 2013. Exh. 136. There is significant danger that the jury could substitute that physician's opinion for either a treating provider's opinion, or an expert opinion. Boeing has named no expert witnesses in this matter. This evidence should be excluded under Fed. R. Evid. 403. The court should redact Exhibits 133, 134/ 137 (duplicate), 138, 172 (proposed redactions highlighted for the Court's review) to exclude any mention of disability benefits; exclude Exhibits 132, 136, 139, and 140 that are relevant only to Plaintiff's seeking disability benefits or their grant or denial; and Exhibits 181, 182, and 185, which relate only to Plaintiff's application for, and disposition of her unemployment benefits claim; and any other reference to collateral benefits.

**4) Exclude evidence that Plaintiff missed doctor's appointments.**

During her employment, Plaintiff missed several scheduled medical appointments, for reasons unrelated to her claims. The Court should exclude evidence of those "no-shows," which Defendant may otherwise use to improperly suggest that Plaintiff is of unreliable character. Plaintiff respectfully requests the Court order exclusion of evidence that Plaintiff rescheduled or failed to attend a medical appointment. This kind of evidence has no purpose other than to diminish Plaintiff's character in the eyes of the jury and to imply that she is of unreliable character, which is prohibited by Fed. R. Evid. 404. Defendant has articulated no other reasonable basis for admission of this evidence.

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969 Fax: 860-3172

Fed. R. Evid. 404 provides that, with narrow exceptions, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, …" Defendant would use evidence of Plaintiff's missed appointment to improperly suggest that she is of unreliable character, and acted in conformity with that character trait on other occasions. Fed. R. Evid. 404. Any evidence Defendant might present pertaining to Plaintiff's attendance at doctor's appointments is irrelevant and has no discernable purpose except to suggest to the jury that Plaintiff is of unreliable character and acted in conformity therewith. This evidence is inadmissible.

Evidence that Plaintiff missed some, but not all doctor's appointments is irrelevant under Fed. R. Evid. 402, because there is no evidence that she failed to obtain adequate medical care for her disability. Even if evidence that Plaintiff missed medical appointments had some probative value, it is likely to mislead the jury, waste time, confuse the legal issues, and unfairly prejudice Plaintiff in violation of Fed. R. Evid.403.

Defendant's Proposed Exhs. 162-164, 168 should be excluded in their entirety and Exh. 165 require redaction (proposed redaction highlighted).

**5) Exclude evidence of Plaintiff's participation in dog shows.**

Plaintiff is a dog enthusiast and occasionally shows her dogs. Defendant attempted, but failed, to show that Plaintiff skipped work, complaining of migraines, to attend dog shows. There is absolutely no evidence to support that theory. The Court should prohibit evidence that Plaintiff attended specific dog shows at all because it is irrelevant, confusing to the jury, and the danger that it will cause unfair prejudice to the Plaintiff outweighs the probative value of the evidence.

Throughout her employment, Plaintiff attended dog shows around the region. She attended shows on non-work days, on days she took vacation leave, while on a longer, continuous (not intermittent) FMLA leave for her own serious health condition, and while on

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

non-occupational leave from Boeing. Defendant has no evidence that Plaintiff's participation in dog shows interfered with her work or that she attended dog shows when she should have been working. Plaintiff's attendance at dog shows should be excluded because it improperly suggests to the jury that Plaintiff was untruthful about her need to take sick days or for intermittent FMLA leave. Defendant has been unable to establish any sick leave or FMLA leave abuse, nor has it uncovered malingering by Plaintiff.

Evidence of Plaintiff's attendance at dog shows should also be excluded because it is more prejudicial than probative, has no bearing on the issues, and will be a significant distraction from the central issues of the case. Fed. R. Evid. 403.

Boeing's Proposed Exhs. 191-204 appear to be related to dog shows, and should be excluded. These exhibits were not produced in discovery, and appear to have been created on July 15, 2014, in anticipation of litigation. Plaintiff's response to Defendant's Proposed Exh. 189, Interrogatory 9 (excerpt containing Interrogatory 9 provided), wherein she was asked to list dog shows that she attended should be excluded, for reasons stated above.

### 6) Defendant should not be allowed to speculate about alleged but unproven malingering.

Defendant has not identified any expert witness to testify about the nature of migraine headaches, what activities Plaintiff could or could not have participated in while experiencing a migraine headache, or to opine as to whether Plaintiff is malingering about the severity of her headaches. Defendant should not be permitted to suggest or speculate that Plaintiff was malingering without producing an expert witness to support its argument.

Defense counsel's opinion of whether and to what extent Plaintiff should have been able to participate in dog shows, make purchases on the internet, go out for a cup of coffee or order takeout food while being a migraine sufferer is improper. As the Court stated previously, "[t]he supposition of lawyers is no substitute for medical opinion." Absent evidence of malingering,

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

there is no basis to suggest to the jury that Plaintiff was not completely honest about her limitations relating to her disability, and Defendant should be prohibited from proposing such speculation to the jury.

**7)  Exclude evidence related to affirmative defenses which were not pled.**

Defendant did not plead an affirmative defense of undue hardship with regard to Plaintiff's failure to accommodate claim, and therefore should be prohibited from claiming undue hardship at trial. *See* Dkt. 9, Boeing's Answer, Defenses, and Affirmative Defenses at 4. Where Defendant did not plead an affirmative defense, such as undue hardship, it has waived the defense. *Farmers Ins. Co. of Washington v. Miller*, 87 Wash. 2d 70, 76, 549 P.2d 9, 12-13 (1976).

Defendant did not include an after-acquired evidence defense in its Pretrial Statement. Local Civil Rule 16(i)(2) bars inclusion without good cause  affirmative defenses not identified in Defendant's Pretrial Statement.  Defendant should not be permitted to introduce evidence or argue any defense which was not included in its Pretrial Statement.

**8)  Exclude logs of phone calls because they are hearsay that do not fall into one of the exceptions, and were created for purposes of litigation.**

Telephone record excerpts produced during discovery are not admissible under the "business record" exception to the hearsay rule, Fed. R. Evid. 803(6), because they are hearsay, untrustworthy and were prepared solely for purposes of litigation. The records that Defendant (Exs. 179-180) are also inadmissible as a summary under Fed. R. Evid.  1006 because they were prepared for purposes of litigation.  Finally, they are inadmissible because they violate the 'best evidence' Fed. R. Evid. 1002.

Defendant provided a few entries of calls allegedly made and/or received by Plaintiff and Boeing manager Jeff Sells.  The records were not made and kept in the "regular course" of

Boeing's business nor is it Boeing's regular practice to make these records. The Declaration of Kenneth Yang In Support of Defendant's Motion for Summary Judgment, Dkt. 28, does not establish a foundation for qualifying these records as business records. Mr. Yang does not aver that these records are kept in the regular course of Boeing's business or that it is Boeing's regular practice to make these records. See Fed. R. Evid. 803(6). Mr. Yang instead avers that he conducts investigations for Boeing and that he gathered these records as part of his investigation. An investigation conducted for purposes of this litigation is not the "regular practice" or "in the course of regular business".

In *Waddell v. C.I.R.,* 841 F.2d 264, 267 (9th Cir. 1988), the Petitioners sought to introduce an appraisal of the property to prove their fair market value. The appraiser, Mr. Ott, had passed away and Petitioner sought to introduce the appraisal as a business record. The trial court held that the appraisal was not a business record pursuant to Fed. R. Evid. 803(6):

> In order to constitute an admissible business record, the report must be "kept in the course of a regularly conducted business activity," and it must be "the regular practice of that business activity" to make that report. Fed. R. Evid. 803(6). Even if a document satisfies these requirements, it may still be excluded if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* We find no indication in the record that Compu-U-Med obtained appraisals of this sort as a "regular practice" of its business. There is thus no foundation for admitting it as Comp-U-Med's business record.
>
> We also find no foundation for admitting Ott's report as the business record of the appraisal firm for which he worked. There is no evidence that Ott's firm had a practice of preparing such appraisals for Comp-U-Med. *See Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1258 (9th Cir.1984) (accounting firm's compliance audit not admissible as business record of firm because it "was not a regularly conducted audit" of defendant).

*Id. at* 267. Likewise, there is no foundation for admitting these telephone records prepared by Boeing because there is no evidence that Boeing had a practice of preparing this type of record as a regular part of its business.

PLAINTIFFS' INITIAL MOTIONS IN
LIMINE - 14

The documents were prepared solely for the purposes of litigation and are inherently untrustworthy.[3]

> Under Rule 803(6), for a memorandum or record to be admissible as a business record, it must be "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge." *Clark v. City of Los Angeles,* 650 F.2d 1033, 1036–37 (9th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982). Business records are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed.R.Evid. 803(6).
>
> . . .
>
> **"[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness."** *Clark*, 650 F.2d at 1037 (citing *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)). This is because "where the only function that the report serves is to assist in litigation or its preparation, many of the normal checks upon the accuracy of business records are not operative." *McCormick on Evidence* § 308, at 877 n. 26 (E. Cleary 3d ed. 1984).

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 (9th Cir. 1984)(emphasis supplied).

Nor are the telephone records admissible under the 'best evidence' rule, Rule 1002. The 'best evidence' rule requires that the original of a writing be offered into evidence "except as otherwise provided by these rules." The lists are not admissible as business records under Fed. R. Evid. 803(6) or as summaries under Rule 1006. The telephone records at Defendant's proposed exhibits 179-180 should be excluded.

**9) Exclude evidence of Plaintiff's financial activities.**

Evidence of Plaintiff's bank records and/or credit and debit card transactions should be excluded because they are not relevant to any claim or defense, (Fed. R. Evid. 401), and because their probative value is substantially outweighed by the danger of unfair prejudice, confusion and misleading the jury (Fed. R. Evid. 403).

---

[3] The contention that Defendant prepared the phone records solely for purposes of litigation is illustrated, in part, by Defendant's inclusion of a telephone call that Plaintiff made to a restaurant to order food at, what Defendant considers to be, a critical time. Defendant included this record solely to demean, humiliate and harass Plaintiff. The fact has absolutely no relevance to the issues in the case.

In response to Defendant's Requests for Production, Plaintiff disclosed copies of tax records, bank statements, credit card statements, emails to her mother about outstanding bills, and other documents related to her personal finances, and the Defendant intends to admit these documents at Exhs. 155-159. These records reflect normal financial activity of a single woman who lives alone.

Immediately before the discovery cutoff date, Defendant brought a Motion to Compel additional information such as the date and time of approximately eighty (80) transactions, the amount of each of those transactions, the name of the seller, vendor, or merchant, the goods or services purchased, and Plaintiff's location at the time of the transaction. Defendant argued that such information was discoverable because, "[her financial records] reflect substantial activity by Ms. Alexander on days when she was absent from Boeing due to her migraines[,]" and that such activity would support Boeing's affirmative defense of after-acquired evidence. *Id*. at 2. Dkt. 35, Defendant Boeing's Motion to Compel.

Defendant would like to argue or otherwise suggest at trial that Plaintiff's bank records provide evidence of such serious misconduct that if Boeing had known of it at the time, she would have been immediately terminated. The Court allowed additional *limited* discovery, to allow Defendant to explore whether or not there was admissible information related to its affirmative defense of after-acquired evidence. There was none and Defendant has not pursued the defense. This evidence holds no probative value but is unfairly prejudicial. It should be excluded.

Fed. Evid. Rule 403 offers protection against unfairly prejudicial evidence. Evidence is unfairly prejudicial if it has 'an undue tendency to suggest decision on an improper basis,' such as an emotional one. Advisory Committee's Note, Fed. R. Evid. 403. The bank records and credit card statements provide copious irrelevant and potentially confusing information such as:

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

a) The date that Plaintiff's credit union <u>processed</u> transactions between her account(s) and vendor(s)[4].

Plaintiff has testified that that the majority of the transactions reflected in the BECU statements were made on dates other than the ones reflected on the record. See Scheele Decl., Defendant's Second Set of Interrogatories and Requests for Production and Responses Thereto-Supplement.

Defendant has no evidence that the processing dates for any particular transaction are the actual purchase dates. Defendant would like to argue that some of the processing dates occurred when Plaintiff was on intermittent leave with a migraine, and therefore Plaintiff was shirking work or falsely calling in sick. Absent the foundation that the purchases occurred on the processing dates reflected on the document, the document is more prejudicial than probative. Defendant has not named a witness who could establish an adequate foundation for these documents.

Other financial records with little relevance and high potential for unfair prejudice include:

b) Account balances and amounts owed on credit accounts;

c) Mortgage balances and payments;

d) The identities of stores and vendors where Plaintiff spent money;

e) The fact that on several occasions Plaintiff had insufficient funds (NSF) to pay for a transaction; and

f) The facts that she was past due on some accounts.

This information has no relevance to the claims or defenses in this action. The information does, however, have a high risk of causing unfair prejudice to Plaintiff, and should be excluded.

---

[4] The transaction reports do not reflect the actual date, location, time of day, or substance of her purchases, so many are unidentifiable, and may include internet purchases and the like. Many others reflect dates other than the purchase date. For example, BECU's records reflect that on July 23, 2012, a financial transaction in the amount of $48.76 occurred between Plaintiff's account and an entity described as "POS Withdrawal THE OLIVE 2400 CAPITAL MALL DR OLYMPIA WAUS Machine# 006 Trace# 00000000140000692050." Scheele Decl., Exh.B, JA 0530. That location is identifiable, and Plaintiff recalls an associated purchase, however she recalls that purchase having been made on July 22, 2012, not July 23. DEFENDANT'S SECOND INTERROGATORIES AND REQUESTS FOR PRODUCTION AND RESPONSES THERETO – SUPPLEMENT, 5.

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

Requiring Plaintiff to provide intimate, irrelevant details about her financial life, including copies of her tax returns, will give those details undue weight in the minds of the jury members. The jury may be negatively biased against her to learn that she regularly made purchases at fast food restaurants (Exh. 158, throughout) or that she regularly shops on Nordstrom's website for clothes (Exh. 157). They may be prejudiced by the fact that she took out a home equity line of credit (Exh. 158), or because she had insufficient funds in her accounts at times (Exh. 158). They may simply disagree with her financial choices, and believe her to be an unreasonable or unreliable person because she did not make the same decisions they would have made. This case is not about what Plaintiff purchased, the amount of her debt, or whether she borrowed from her parents to pay her bills. Defendants can present information about Plaintiff's income during the relevent in another, less intrusive manner than introducing her tax returns. The probative value of this evidence is so low, and the potential prejudice so high, it should be excluded. If her bank records are offered to prove a now-existing financial motive for this litigation, it must be pointed out that these purchases occurred prior to Plaintiff's termination.

Defendant will no doubt argue that Plaintiff's financial records provide a snapshot of the time she was on leave. Boeing hopes to unfairly prejudice the jury against Plaintiff by insinuating that the purchases she made are evidence of what she was capable of doing while she was on medical leave and that her migraines were not as severe as she describes. Even if the foundation were laid that some purchases occurred during sick leave, the evidence should still be excluded because Defendant has not named an expert witness who could testify about how and when migraines begin and end, or what an individual who suffers from migraines is capable of doing on any particular day.

The Court should exclude evidence of Plaintiff's financial transactions because the information does not accurately reflect Plaintiff's actions on any particular date, thereby

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

negating its probative value, and the evidence is unfairly prejudicial. In addition to the foregoing, this includes Exhibits 155-159, and any reference to their contents.

**10) Exclude evidence of Plaintiff's ex-husband's crimes, addiction, and/or any investigation of similar facts.**

Plaintiff obtained a divorce from her then husband in 2008. While they were married, and while he was working as a police officer for the City of Kirkland, he was investigated for crimes related to abuse of prescription medication. Plaintiff's medical records were requested by the U.S. Drug Enforcement Administration as part of the investigation of her ex-husband. Plaintiff was not investigated for any crime, nor is there any evidence that she was complicit in her ex-husband's criminal behavior.

Plaintiff has not communicated with her ex-husband in years, and since their divorce, his actions have had no impact on Plaintiff's life or emotional condition. Evidence of their relationship, his actions, and the investigation and its outcome has no relevance to her claims, damages, and/or Boeing's defenses in this matter. Any evidence about these facts or their impact on Plaintiff should be prohibited under Fed. R. Evid. 401 (relevance), and 403 (prejudice, waste of time, distraction).

\
\\
\\\
\\\
\\\
\\\

## IV.  CONCLUSION

This concludes Plaintiffs' Initial Motions in Limine.

DATED this 28th day of July, 2014.

Teller & Associates, PLLC by

_____
Andrea Scheele, WSBA # 36773
1139 34th Ave, Suite B
Seattle, WA 98122
Attorney for Plaintiff


_____
Reba Weiss, WSBA #12876
1139 34th Ave, Suite B
Seattle, WA 98122
Attorney for Plaintiff

**Teller & Associates**
1139 34th Ave, Suite B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July, 2014, I served the foregoing **PLAINTIFF'S INITIAL MOTIONS IN LIMINE** on the following parties at the following addresses:

**Counsel for Defendant:**

Perkins Coie LLP
James Sanders
Zachary P. Jones
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-8000
jsanders@perkinscoie.com
zjones@perkinscoie.com

By causing a true and correct copy thereof to be delivered by the Court's CM/ECF service and in addition, if appropriate, ___ mailed; ___ faxed; ___ e-mailed; or ___ hand delivered to the above address.

Andrea Scheele, WSBA # 36773