# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JILL ALEXANDER, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>THE BOEING COMPANY, a corporation doing business in the State of Washington,<br><br>    Defendant. | NO. 2:13-CV-01369<br><br>**PLAINTIFF'S TRIAL BRIEF** |

## I. INTRODUCTION AND FACTUAL SUMMARY

Jill Alexander was employed by Boeing for 17 years until May 2, 2013, when Boeing fired her in violation of the state and federal Family and Medical Leave Acts, 29 U.S.C. §§ 2601-2654, RCW 49.78.410;[1] and the Washington Law Against Discrimination, (WLAD), RCW 49.60 (prohibiting disability discrimination and retaliation). For additional facts, Plaintiff refers the Court to the recent summary judgment briefing.

## II. LEGAL AUTHORITIES RELATED TO JURY INSTRUCTIONS

A. **The Purpose of the FMLA and its Basic Function (<u>Instructions #26-37; 43, 44</u>)**

"It is unfair for an employee to be terminated when he or she is struck with a serious illness and is not capable of working." S. REP. NO. 103-3, at 11 (1993). To remedy this inequity, Congress passed the Family and Medical Leave Act of 1993 ("FMLA"). The FMLA

---

[1] Alexander refers to both statutes, the FMLA and the WFMLA, as "FMLA" or "FMLAs" in this memorandum.

| | |
|---|---|
| **ALEXANDER'S TRIAL BRIEF – p. 1**<br>**Case No. 2:13-CV-01369** | **Teller & Associates, PLLC**<br>1139 34th Ave, Suite B<br>Seattle, WA 98122<br>(206) 324-8969  Fax: 860-3172 |

entitles "employees to up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights." *Bachelder v America West Airlines,* 259 F.3d 1112, 1119 (2001) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). The FMLA has two interrelated rights: The employee has the right to use a certain amount of leave for protected reasons; and the employee has the right to return to her job after the leave. *Id.* at 1122. It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the Act." *Id*. Employers also cannot use the taking of FMLA leave as a negative factor in employment actions, including disciplinary decisions. *Id*. at 1122-23 (citing 29 C.F.R. § 825.220(c)).

Retaliation for taking FMLA leave in this matter would be co-extensive with retaliation for taking leave as a disability accommodation under RCW 49.60, so there is no need to instruct the jury on the question of such illegally motivated retaliation under the FMLA in addition to the WLAD instruction.[2] The case of *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) is directly on point. There the court stated these "FMLA claims "do not depend on discrimination." *Id.* This issue is addressed in more detail below at Section H.

B. **The Employer's Obligation to Inform the Employee of FMLA Rights (Instr. #27)**

"[T]he employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence may qualify for FMLA protection." *Bachelder,* 259 F.3d at 1131; 29 C.F.R. § 825.302(c), *see also* 29 C.F.R. § 825.300(b). An employee is not required to request FMLA leave specifically; rather it is the employer's responsibility to determine whether a leave request is likely to be covered by the Act. *Bachelder* at 1131; 29 C.F.R. § 825.301(b). Plaintiff's Proposed Jury Instruction No. 27 addresses this.

---

[2] Unfortunately there is some confusion regarding use of the term "discrimination" and "retaliation" in the statute in places where it actually refers to interference with rights. See *Bachelder v. Am. W. Airlines*, Inc., 259 F.3d 1112, 1124-25 (9th Cir 2001). Again, this is addressed in detail at Section H, below.

**ALEXANDER'S TRIAL BRIEF – p. 2**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969   Fax: 860-3172

It was not until May 10, 2012, that Boeing admits it recognized Alexander might be eligible for FMLA leave. By that date, Alexander had missed at least sixteen days' work in 2012 due to migraines. Even after the suggestion was made, Boeing took more than one month to advise Alexander that she should apply for FMLA. We know Alexander was eligible, because when she applied, it was promptly approved. By this delay, Boeing made her vulnerable to criticism for excessive absenteeism on days she should have had FMLA protection available to her. Alexander was denied FMLA protection for the sixteen days she was absent between March and May 10, 2012, because Boeing failed in its duty to advise her about her FMLA rights.

Failure to provide FMLA leave is an interference with an employee's protected FMLA rights. *Bachelder,* 259 F.3d at 1122-26; 29 C.F.R. § 825.220(b). "Where a plaintiff alleges that an employer has interfered with an employee's rights under the FMLA, 'the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.'" *Turevsky v. FixtureOne Corp.*, 904 F. Supp. 2d 454, 459-60 (E.D. Pa. 2012) (citing *Sommer v. The Vanguard Group,* 461 F.3d 397, 399 (3d Cir. 2006)). Boeing violated the FMLA when it did not advise Alexander of her FMLA rights until June, 2012. 29 C.F.R. § 825.220(c)

C. **Interference with FMLA Rights – CAM for June 25, 2012 (Instr. # 26-37, 43)**

Boeing approved Alexander for FMLA intermittent leave between June 20, 2012, and December 19, 2012, for up to two times per month and five days per incident. She was absent due to migraines on June 25th, 26th, and 27th of 2012. Boeing denied her FMLA leave on June 25th because she did not call Total Access within 48 hours, even though she did contact her manager, Mr. Sells. Not only did Boeing deny her FMLA leave, it also issued her discipline in the form of a Corrective Action Memo (CAM) for the absence. The denial of FMLA leave and disciplinary action interfered with her FMLA rights and violated the Act.

**ALEXANDER'S TRIAL BRIEF – p. 3**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

FMLA regulations provide that for unforeseeable leave, the employee must "provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). The regulations further provide that "an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). Boeing maintains Alexander did not comply with its "usual and customary notice and procedural requirements for requesting leave" because she failed to call Total Access within 48 hours. Neither Boeing's manager nor its human resources generalist knew where to find the policy that requires this.

The FMLA regulations provide: "In all cases, in order for the onset of an employee's FMLA leave to be delayed due to lack of required notice, it must be clear that the employee had **actual notice** of the FMLA notice requirements." 29 C.F.R. § 825.304(a) (emphasis added). The evidence will show that Alexander did **not** have actual notice of the requirement to call Total Access within 48 hours of her leave, but she did call her manager on the first day of leave. Boeing did not have the right to deny FMLA coverage and to impose discipline. These actions interfered with Alexander's FMLA rights.

**D. Eligibility for Leave: Hours Worked (<u>Jury Instruction No. 31</u>)**

The minimum hours worked for FMLA eligibility are calculated using the principles established under the Fair Labor Standards Act. 29 C.F.R. § 825.110(c); *MacSuga v. Spokane*, 97 Wn. App. 435, 444-46 (1999). Under the FLSA and the FMLA, "[a]n employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask …, so long as the employer 'knows or has reason to believe that [the employee] is continuing to work,' and that work was 'suffered or permitted' by the employer." *Kosakow v. New Rochelle Radiology Asso.,* 274 F.3d 706, 718 (2d Cir. 2001) (citing 29 C.F.R. § 785.11). The employer has the burden of proving by a preponderance of the evidence that the employee worked less

**ALEXANDER'S TRIAL BRIEF – p. 4**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969 Fax: 860-3172

than 1250 hours in the previous 12-month period. 29 C.F.R. 825.110 (c)(3)("the employer has the burden of showing that the employee has not worked the requisite hours.").

Boeing claims it denied Alexander FMLA leave in January 2013 because she had not worked the required 1,250 hours, so Boeing imposed discipline—a five (5) day suspension. Alexander was eligible for FMLA because she worked extra hours that were not considered. She was a manager and commonly worked both before and after her "regular" work day. In addition, due to time difference, she spent considerable time in the evenings working with her Japanese partners. Boeing had reason to know Alexander was performing unreported work. If leave was improperly denied, Boeing interfered with Alexander's FMLA rights.

### E. Boeing Failed to Accommodate Plaintiff Under the WLAD (Instr. # 19-25)

Washington State law regarding failure to accommodate law recognizes that "[i]dentical treatment may be a source of discrimination in the case of the handicapped, whereas *different* treatment may eliminate discrimination against the handicapped and open the door to employment opportunities." *Holland v. Boeing*, 90 Wn.2d 384, 388 (1978) [orig. emph.]; *Doe v. Boeing,* 121 Wn.2d 8, 20 (1993); *Dean v. METRO*, 104 Wn.2d 627, 638–39 (1985).

To establish a *prima facie* case of failure to accommodate, a plaintiff must show that she (1) had a sensory, mental, or physical abnormality that substantially limited her ability to perform the job; (2) was qualified to perform the essential functions of the job with or without reasonable accommodation; (3) gave the employer notice of the disability and its accompanying substantial limitations; and (4) that upon notice, the employer failed to reasonably accommodate her. *Davis v. Microsoft*, 149 Wn.2d 521, 532 (2003). Plaintiff need not establish intent to discriminate for a reasonable accommodation claim. *Pulcino v. Fed. Express Corp*, 141 Wn.2d 629, 640 (2000);[3] *Parsons v. St. Joseph's Hosp.*, 70 Wn. App. 804,

---

[3]*Pulcino* was partly overruled on other grounds, *McClarty v. Totem Elec*., 157 Wn.2d 214 (2006), then superseded by statute, Laws of 2007, ch. 317, § 1 (codified as RCW 49.60.040(25)(a)), as recognized in *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 499 (2009)

**ALEXANDER'S TRIAL BRIEF – p. 5**  
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

807 (Div. II 1993); *Goodman v. Boeing*, 75 Wn. App. 60 n.7 (Div. I 1994), *aff'd,* 127 Wn.2d 401 (1995).[4]

Boeing concedes Alexander meets the first [she was disabled] and third [Boeing had notice] prongs of her *prima facie* case, but claims Alexander was not qualified for the job with or without a reasonable accommodation and therefore does not meet the second prong because she was absent too much. Alexander's job description does not state that she must be present in the office to satisfactorily perform the duties of her position. Prior to the revocation of her telecommuting accommodation, Alexander more than satisfactorily completed tasks required of her from a computer at home, as reflected in her performance reviews. In the past, Alexander had been allowed to work from home if she had a migraine, and was able to do work when the migraine was only moderate, or when she had temporary relief from a severe migraine.

When an employer proves a job actually requires face-to-face interaction or presence in the workplace, *i.e.,* a groundskeeper, a NICU nurse, courts have held that regular and predictable attendance in the workplace is an essential job function. *See Fey v. State*, 174 Wn. App. 435, 439-40 (2013), *rev. denied*, 179 Wn.2d 1029 (2014); *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237-38 (9th Cir. 2012). Alexander's job, however, did not require she interact face-to-face with her colleagues or clients daily. When necessary because of migraine or other sickness, she attended teleconferences, emailed, worked on shared electronic documents, and only occasionally needed to meet in person with her group or clients. Her job was well-suited to allow her to telecommute on an as-needed basis, and for almost five (5) years, both before and after she was promoted to manager, she routinely performed these functions to Boeing's satisfaction from her desk at home.

---

[4] Boeing incorrectly argued previously these facts are akin to those in *McEnroe v. Microsoft Corp.*, CV-09-5053-LRS, 2010 WL 4806864 (E.D. Wash. Nov. 18, 2010) and *Davis*. There was no tangible employment action in *McEnroe,* and Alexander's essential job functions are not comparable to those analyzed in *Davis*. *See Davis v. Microsoft*, 149 Wn.2d 521 (2003).

**ALEXANDER'S TRIAL BRIEF – p. 6**
**Case No. 2:13-CV-01369**

**Teller & Associates, PLLC**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969   Fax: 860-3172

Recently, the Sixth Circuit Court of Appeals issued a decision with important ramifications for disabled employees and their employers. *E.E.O.C. v. Ford Motor Co.*, 752 F.3d 634 (6th Cir. 2014). The Court recognized technological advances require a modified legal analysis to determine whether work from home is a reasonable accommodation:

> [T]he law must respond to the advance of technology in the employment context, as it has in other areas of modern life, and recognize that the "workplace" is anywhere that an employee can perform her job duties. Thus, the vital question in this case is not whether "attendance" was an essential job function for a resale buyer, but whether physical presence at the Ford facilities was truly essential.

*Id.* at 641. This was despite testimony from managers who expressed their business judgment that it was essential. *Id.* at 642-43. There the Court cautioned:

> While we do not allow plaintiffs to redefine the essential function of the jobs based on their personal beliefs about job requirements, neither should we allow employers to redefine the essential functions of an employee's position to serve their own interests. Rather, we should carefully consider all relevant factors ….

Alexander's excellent performance evaluations during the period she was allowed to telecommute and work partial days are evidence that those accommodations were working for both Boeing and Alexander, and therefore were reasonable accommodations.[5]

In 2012-13, Alexander was not referred to Boeing's formal "Medical Accommodation" process or to a Disability Management Representative (DMR) responsible for overseeing Boeing's reasonable accommodation process. Under the WLAD, an employee is not required to formally request an accommodation to trigger an employer's affirmative obligations; instead, the employer's affirmative obligation to provide a reasonable accommodation arises "as soon as the employer has notice of the employee's disability." *Downey v. Crowley Marine Servs.*, 236 F.3d 1019, 1023, 1022–24 (9th Cir. 2001); *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 876-

---

[5] *See also Pulcino*, 141 Wn.2d at 644; *Phillips v. City of Seattle,* 111 Wn.2d. 903, 911 *(1989)*; *Wilson v. Wenatchee Sch. Dist.*, 110 Wn. App. 265, 271 (Div. III, 2002). *See* WAC 162-22-065(2)(a) (adjusting work schedule is an example of a reasonable accommodation); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989) ("As long as a reasonable accommodation available to the employer could have plausibly enabled a [disabled] employee to adequately perform his job, an employer is liable for failing to attempt that accommodation.").

**ALEXANDER'S TRIAL BRIEF – p. 7**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

77, n. 7 (9th Cir.1989). Instead, the employer is obligated to engage the employee in an "interactive process" to find an accommodation. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1117 (9th Cir.2000), *vacated on other grounds*, 535 U.S. 391. Generally, the best way for the employer and employee to determine a reasonable accommodation is through a flexible interactive process. RCW 49.60.040(7)(d); *Frisino v. Seattle School District No. 1,* 160 Wn. App. 765, 779 (2011); *MacSuga*, 97 Wn. App. at 443.

An employer's duty to engage in the interactive process is a critical, mandatory step, the importance of which is underscored by case law creating separate and independent liability for an employer who fails to engage in the interactive process. *Barnett*, 228 F.3d at 1117. Instead of taking this mandatory step, Boeing revoked reasonable, available, and effective accommodations, *e.g.*, permission to work from home and take partial sick days when needed, and to use flex time to make up for sick days. These accommodations had successfully allowed Alexander to maximize her productive efforts for years.

Boeing argues it engaged in the interactive process by suggesting that Alexander take a demotion to a non-management position on January 29, 2013, during a disciplinary meeting when Alexander was crying and distraught.[6] Alexander denies this offer was an effort to accommodate her. Rather, the demotion was intended as a disciplinary measure because Boeing believed that Alexander was absent too often and disregarded the fact that the vast majority of absences were due to her disability and protected by law. HRG Williams stated in an email to Alexander's manager: "If [Alexander] is no longer interested in management, we can move forward with making the change [demotion]. However, if she is still interested in being in management, we will let her know that we will move forward with a Performance Improvement Plan (PIP) . . . a CAM [Corrective Action Memo] will also be given in

---

[6] Boeing asserts it engaged Alexander in the interactive process by offering her "numerous" accommodations including "a different chair," "a different work space, "and "a different type of computer." Alexander denies Boeing offered her a different computer, chair or work space.

**ALEXANDER'S TRIAL BRIEF – p. 8**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969 Fax: 860-3172

conjunction with the PIP." The intent was clear: Alexander must either agree to a demotion, or be disciplined.

### F. Boeing Intentionally Discriminated Against Alexander Because of Disability and Retaliated Because She Used Absences As Accommodation <u>(Instr. # 26-30)</u>

Boeing discriminated against Alexander under the WLAD because of her disability and/or retaliated against her for needing accommodation when it: (1) Gave her a poor evaluation because she took FMLA leave as accommodation for disability; (2) Disciplined her because she did not call Total Access within 48 hours even though she advised her supervisor of her absence; (3) Suspended her for five days when her disability caused her to exceed her accrued sick and vacation days; (3) Revoked permission to telecommute; (4) Showed animus toward her; and (5) Terminated her on the pretext of "job abandonment".

Alexander's supervisors were displeased with Alexander's need for time off due to her disability. An employee's conduct resulting from a disability, not merely the disability *per se*, is protected under WLAD when the employer knows or should have known of the disability. *Riehl v. Foodmaker,* 152 Wn.2d 138, 152 (2004) ("Conduct resulting from the disability (e.g., decrease in performance) is part of the disability and not a separate basis for termination.").

***Boeing has not asserted the defense of undue hardship, so it may not present evidence and/or argue that accommodating Ms. Alexander was an "undue hardship", i.e., too difficult or expensive.*** Evidence that Ms. Alexander's absences were difficult or a hardship on her co-workers, and/or managers, and/or Boeing itself, should not be permitted. Boeing should also be prohibited from arguing this defense to the jury. If the Court permits Boeing to rely upon the "undue hardship" defense, the instructions from WPI 330.34 and 330.36 should be given. *Easley v Sea-Land Serv., Inc.*, 99 Wn. App. 459, 464, 994 P.2d 271, 275 (2000).

**ALEXANDER'S TRIAL BRIEF – p. 9**  
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC  
1139 34th Ave, Suite B  
Seattle, WA 98122  
(206) 324-8969  Fax: 860-3172

### G. Defendant's Business Judgment Instruction is an Incorrect Statement of the Law. (Def. Instr. No. 14) (Pl. Instr. No. 45)

Defendant submits a jury instruction which misstates the law and denies inferences the jury is allowed to make from the evidence. The instruction is not approved by the Ninth Circuit's Model Jury Instruction committee for discrimination cases as it plainly misstates the law. Allowing it will require additional instructions to correct the implication that the jury may not infer discrimination from various types of circumstantial evidence.

While other circuits have adopted the Business Judgment instruction, the 9th Circuit Model instructions do not include it. In addition, Washington Courts have held such instructions to be error.

> Moreover, the proposed instruction contains an erroneous statement of the law. In *Baldwin*, this court struck a balance between the employer's interest in making personnel decisions and the employee's interest in continued employment by approving a just cause standard which checks the employer's subjective good faith standard with an objective reasonable belief standard. *Baldwin* [112 Wn.2d. 127] at 139. By directing the jury to give substantial weight to the employer's decision, the proposed instruction alters the balance carefully delineated in *Baldwin*, and shifts it impermissibly in favor of the employer.

*Havens v C&D Plastics*, 122 Wn 2d 156, 167 (1994). Plaintiff has the burden of proving illegal motive in discrimination and retaliation cases, which is laid out quite clearly in the model and pattern instructions. Defendant's Proposed Instruction No. 14 improperly limits the methods Plaintiff may use to prove that motive. See also *Burchfiel v. Boeing Corp.*, 149 Wash. App. 468, 493, 205 P.3d 145, 157 (2009) (Not error to deny Business Judgment instruction which "added nothing new," and "Boeing was able to argue its theory of the case on the instructions as given."). Mr. Sanders was counsel for Boeing in that matter, and is aware of the above.

Further, the Business Judgment instruction does not accurately reflect the law. It specifically claims, for example, that mistakes do not violate the law, when, in fact, they do. See *Bachelder*, 259 F.3d at 1130 ("An employer who acts in good faith and without knowledge that its conduct violated the Act, therefore, is still liable for actual damages *regardless of its*

**ALEXANDER'S TRIAL BRIEF – p. 10**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

*intent*.")(emphasis supplied). Motive evidence is not required to prove an FMLA violation or a failure to accommodate claim.

For the claims in which motive is relevant, such as discrimination and retaliation under the WLAD, the Business Judgment instruction will confuse the jury by incorrectly instructing them that they may not use evidence of policy violations, unfair treatment, alleged "mistakes" and the like as evidence of discriminatory intent. The spirit and thrust of the proposed Business Judgment instruction No. 14 directly denies that "unreasonable" and "[un]fair" decisions which are inconsistent with Boeing policies may be discriminatory. That is an incorrect statement of the law.

If the Court is inclined to give Defendant's Proposed Instruction No. 14 to the jury, then the "permissive inference" instruction, Plaintiff's Proposed Instruction No. 45, must also be given. "[I]f the jury instructions set forth the essential elements the plaintiff needs to prove, the district court's refusal to give an instruction explicitly addressing pretext is not reversible error." *Browning v. United States,* 567 F.3d 1038, 1041 (9th Cir.2009). However, if the balance is shifted against existing law to mislead the jury into believing any "mistake" or policy violation may not prove discrimination, then the supplemental "*St. Mary's*" or "permissive inference" instruction will be required to re-balance the scales.[7]

"Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive." *Wilmot v. Kaiser Aluminum*, 118 Wn.2d 46, 69 (1991). Discriminatory or retaliatory intent can be established by either direct or indirect evidence. *Sellsted v. Washington Mutual*, 69 Wn.App. 852, 860 (1993)("Circumstantial, indirect and inferential evidence will suffice to discharge the plaintiff's burden."). There is an inference of discrimination where the employer gives false reasons for an adverse employment action. *Sellsted v. Wash. Mutual Savings*, 69 Wn.App. 852, 860-61 (1993)

---

[7] Named for *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)

**ALEXANDER'S TRIAL BRIEF – p. 11**
**Case No. 2:13-CV-01369**

rev. den, 122 Wn.2d 1018; *Payne v. Norwest,* 113 F.3d 1079, 1080 (9th Cir. 1997). "If the fact finder determines that the proffered reasons--alone, together or because they conflict--are not credible, the presumption of an impermissible consideration as outlined in *Furnco* [*Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 2950 (1978)], would permit the conclusion that [protected class] was a ... factor in [plaintiff's] discharge." *Sellsted*, at 861. The causal link between use of FMLA leave and the adverse employment actions may be proven by direct or circumstantial evidence and/or by disproving the employer's proffered reasons for the actions. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

If the defendant proffers an alternative basis for its action, other than discrimination, but the trier of fact rejects it and believes plaintiff's prima facie case, no additional proof of discriminatory intent is required, and the factfinder may infer the ultimate question of discriminatory intent. *Id.* at 511; *Reeves v. Sanderson Plumbing Products* 530 U.S. 133, 120 S.Ct. 2097 (2000). If plaintiff establishes her prima facie case and successfully rebuts the defendant's proffered basis for termination, i.e., "job abandonment", the jury will be entitled to infer discriminatory intent. Plaintiff's Proposed Instruction No. 45 is the correct statement of the law and should be given to the jury, and in any event Defendant's "business judgment" instruction is incorrect and confusing, and should not be given.

### H. The Motivating Factor Standard for FMLA Retaliation Claims is Error (<u>Def. Instr. No. 9A, 9B, and 9C) (Pl. Instr. No. 28, 29)</u>

Defendant proposes alternative instructions for retaliation for use of FMLA leave, each of which imports the "motivating factor" standard of proof from Title VII jurisprudence. This is error. "[E]mployers cannot use the taking of FMLA leave as a **negative factor** in employment actions, such as hiring, promotions or disciplinary actions;". 29 C.F.R. 825.220(c)(emphasis supplied).

**ALEXANDER'S TRIAL BRIEF – p. 12**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969 Fax: 860-3172

Consideration of an employee's absences as a negative factor in evaluating her performance, imposing discipline or deciding whether to terminate her employment constitutes interference with the use of FMLA protected leave:

> Liu also alleges that Amway impermissibly used her FMLA leave as a factor in the decision to terminate her. Where an employee alleges that his or her FMLA leave is impermissibly considered in the decision to terminate him or her, this Circuit applies the standard set forth by the DOL in 29 CFR § 825.220(c). *Bachelder*, 259 F.3d at 1124–25. Thus, at trial, an employee may prevail on a claim that an employer interfered with her rights by terminating her in violation of FMLA by showing, by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. *Id.* at 1125.

*Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135-36 (9th Cir. 2003); Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124-25 (9th Cir. 2001).

The "Motivating Factor" instruction has no place in the jury instructions in this case. The jury should be instructed with Plaintiff's Proposed Instructions No. 28 and 29, which mirror the statute, pertinent regulation and case law.

### III. ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

**A. Plaintiff May Use Many Alternative Means to Prove Discriminatory Motive**

To prevail on the element of illegal motive, plaintiff need only present sufficient evidence that a reasonable jury could infer that discrimination was a substantial factor in Boeing's decision-making. *Hill v. BCTI Income Fund-I*, 144 Wn. 2d 172, 186-87 (2001). She can prove this through direct or circumstantial evidence. *Id.*; *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn. App. 611, 619-22 (2002); *see also Costa v. Desert Palace, Inc.*, 299 F.3d 838, 851-54 (9th Cir.2002) (en banc), *aff'd*, 539 U.S. 90 (2003).

Alexander may use various methods to prove intentional discrimination. *Kastanis v. Educ. Emps, Credit Union*, 122 Wn.2d 483, 490 (1993). She need not have "direct" admissions of illegal motive, or demonstrate the existence of a similarly situated person who was treated

**ALEXANDER'S TRIAL BRIEF** – p. 13  
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC  
1139 34th Ave, Suite B  
Seattle, WA 98122  
(206) 324-8969  Fax: 860-3172

better than herself to prevail. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) Compare *McDonnell Douglas v. Green*, 411 U.S. 792, 804-05 (1973) with *Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Pac. Shores Properties v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013). Alexander does not have to rely on the *McDonnell Douglas*[8] approach to prove discriminatory intent. *See also Costa,* 299 F.3d at 855.

In this case, the facts include both direct and circumstantial evidence of animus, e.g.,

- Despite knowing Alexander's absences were due to migraines, Director Dickinson revoked permission to work from home or use partial sick days. The change forced her to take entire days off when she had a migraine, rather than get her work done.

- On May 10, 2012, in an email chain, Alexander's supervisors and HRG Williams discussed her missing full work days due to migraines. Alexander's director instructed her manager to "keep good documentation," of Alexander's absences.

- Shortly after Alexander was approved for migraine-related leave, she was disciplined for failing to call Total Access timely despite having no notice of the policy. A reasonable manager not seeking termination could have used the opportunity to warn and educate instead.

- Manager Sells issued Alexander a poor evaluation for 2012 because she was out of the office due to disability and FMLA leave. He testified that "it was difficult to give [her] an 'adequate' performance review without her being at work … as often as she missed" and "the fact that she did miss a lot of work did play into the fact that she wasn't as effective as she could have been just by the fact she wasn't there."

---

[8] Under the *McDonnell Douglas* test, Alexander must show: (1) She was within the protected group; (2) She was discharged or suffered some other adverse action; (3) She was replaced by a person outside the protected group; and (4) She was qualified to do the job. *Kastanis*, 122 Wn.2d at 490. The *McDonnell Douglas* burden-shifting analysis is intended to overcome the frequent lack of direct evidence of illegal motive. It should not be applied inflexibly to bar claims. *Costa v. Desert Palace*, 299 F.3d 838, 848 (9th Cir. 2002).

**ALEXANDER'S TRIAL BRIEF – p. 14**
**Case No. 2:13-CV-01369**

**Teller & Associates, PLLC**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969 Fax: 860-3172

- Director Dickinson's emails reflect that as early as January 9, 2013, before the second CAM, he was trying to replace Alexander because of her disability-related absences.

- There is no dispute that her work was satisfactory. The only motives for replacing her were protected absences and disability.

- Alexander's manager, Sells, was working with Dickinson to replace Alexander in January 2013. "I have been working the issues with Jill Alexander. She is currently under corrective action and will be receiving a second CAM shortly. Mike is well aware of the issues and had been working on a backfill."

- Boeing treated Alexander worse than similarly situated individuals. Her colleague, Bill Cook, held the same position, and after Alexander's telecommute accommodation was revoked, he was allowed to telecommute frequently when he was out of the office.

- Boeing relies on conflicting policies about what constitutes job abandonment, *i.e.*, three days vs. four days. Boeing chose to exercise the more stringent policy.

- Williams testified that she was not entirely comfortable with moving forward with separating Alexander on the basis of job abandonment when Alexander explained that the reason she did not return to work was because she was serving a five-day suspension. Williams and Sells fired Alexander anyway.

This is not intended as a complete list, but merely to show the varying types of evidence Plaintiff may use to show illegal motive.

## IV.  DAMAGES

Alexander seeks damages for emotional distress and lost wages (back pay and front pay), loss of enjoyment of life, and, if she is successful in obtaining a verdict, attorneys' fees and costs of this litigation. In addition, if she is successful on her FMLA or WFMLA claims, she is entitled to liquidated damages equal to her economic losses. 29 U.S.C. § 2617.

**ALEXANDER'S TRIAL BRIEF – p. 15**  
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC  
1139 34th Ave, Suite B  
Seattle, WA  98122  
(206) 324-8969   Fax: 860-3172

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations or to recover the actual damages sustained, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended . . . .

RCW 49.60.030(2). The term "actual damages" under RCW 49.60 includes lost wages and other pecuniary advantages of employment. The Washington Supreme Court has interpreted RCW § 49.60.030 to provide damages such as back pay, front pay, emotional distress, costs, and attorney's fees, as well as any other appropriate remedy authorized by state or federal statute. *Blaney v. Int'l Ass'n of Machinists*, 151 Wn.2d 203 (2004); *and see, e.g.*, *Davis v. Dept. of Labor and Indus.*, 94 Wn.2d 119, 125-27 (1980). Such remedies have been described by the Washington Supreme Court as "a full panoply of compensatory damages" and aim to allow the plaintiff to "become whole." *Dailey v. North Coast Life Insur. Co.*, 129 Wn.2d 572, 574 (1996). Back pay and lost future earnings, including "front pay" and losses due to damaged earning capacity, are amounts Alexander would have received, in the form of wages and other valuable benefits, had she not been fired, less any money she has earned prior to trial.

Upon proof of discriminatory discharge, back pay is ordinarily awarded as a matter of right, and "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purpose of eradicating discrimination throughout the economy and making persons whole for injuries suffered for past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975); *EEOC v. Ford Motor Co.*, 458 U.S. 219, 225-228 (1982). In calculating back pay, mathematical certainty is not required. *Kaplan v. International Alliance of Theatrical & Stage*, 525 F.2d 1354, 1363-64 (9th Cir. 1975).

Because Boeing's unlawful conduct created the necessity for back pay award, "any doubts concerning back pay should be resolved against the employer." *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 127 (1980); *Mead v. U.S. Fidelity & Guarantee Co.*, 442 F. Supp. 114, 134 (D. Minn. 1977); *Hairston v. Mclean Trucking Co.*, 520 F.2d 226, 233 (4th Cir.

**ALEXANDER'S TRIAL BRIEF – p. 16**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

1975); *Pettway v. American Cast Iron Pipe Co.*, 495 F.2d 211, 260-261 (5th Cir. 1974). Neither good faith nor the difficulty in calculating the back pay award, constitute exceptional circumstances sufficient to justify denial of back pay. *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626-27 (6th Cir. 1983); *Kirby v. Colony Furniture Co.*, 613 F.2d 696, 699-700 (8th Cir. 1980). Back pay includes wages, insurance coverage, pension rights, and other employee benefits which would have accrued to the plaintiff. *Kelly v. American Standard, Inc.*, 640 F.2d 974 n.20 (9th Cir. 1981); *U.S. v. Leeway Motor Freight, Inc.*, 625 F.2d 918, 945 (10th Cir. 1979); *Holland v. Boeing Co.*, 90 Wn.2d 384, 393 (1978) (vacation time awarded).

Future lost wages or "front pay" is the value of wages and benefits into the future, up to and including planned retirement. *Id.* Both are questions for the jury.

> Once an employee produces evidence from which a reasonable future employment period may be projected, the amount of front pay, including the likely duration of employment, should go to the jury. *Cf. Pannell*, 61 Wn. App. at 442, 810 P.2d 952; *Kohn*, 69 Wn. App. at 726, 850 P.2d 517. In an at-will employment situation, an employee might expect to be employed for "a reasonable future period", although not necessarily until retirement. *Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir.1985).

*Lords v. Northern Automotive*, 75 Wn. App. 589, 597-98 (1994) ("The trial court erred in limiting front pay to 5 years after termination"). Economist Christine Tapia, Ph.D., will testify for Alexander as an expert witness who has conducted relevant research and will summarize and calculate lost wages, including front pay, for the jury.

Actual damages also include damages for emotional distress. *Herring v. DSHS*, 81 Wn. App. 1, 23-24 (Div. II 1996). Emotional distress damages include "[t]he natural and ordinary anxiety and depression incident to the discriminatory acts." *Id.* No medical evidence of damages or causal connection between alleged discrimination and emotional distress is required. *Id.* A plaintiff may recover damages for emotional distress so long as she presents evidence, even solely her own testimony, which is sufficient to support a damages award. *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 179-84 (2005) (en banc).

**ALEXANDER'S TRIAL BRIEF – p. 17**  
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC  
1139 34th Ave, Suite B  
Seattle, WA 98122  
(206) 324-8969   Fax: 860-3172

Under RCW Chapter 49.60, damages might be taxable income to the plaintiff. A plaintiff may recover an "offset" against or "gross up" to her taxes to compensate her for the federal income tax consequences of a damages award under RCW 49.60.030(2). *Blaney*, 151 Wn.2d 203, 212-17 (2004) (the offset is recoverable under RCW 49.60.030(2)'s "other appropriate remedy" language rather than as actual damages). This request may be presented in the form of a motion for supplemental judgment. *Id.* at 209.

## V. CONCLUSION

For all of the reasons expressed above, Plaintiff Jill Alexander respectfully requests that the Court provide the jury with the instructions she proposes.

DATED this 11th day of August, 2014.

*[signature]*

Reba Weiss, WSBA #12876
Teller & Associates
Attorneys for Plaintiffs
1139 34th Ave., Ste. B
Seattle, WA 98122
reba@stellerlaw.com

**ALEXANDER'S TRIAL BRIEF – p. 18**
**Case No. 2:13-CV-01369**

**Teller & Associates, PLLC**
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

# CERTIFICATE OF SERVICE

On August 11, 2014, I caused to be served via Email and filing with the Court true and correct copies of ALEXANDER'S TRIAL BRIEF upon counsel of record at the address stated below:

>James Sanders
>Perkins Coie, LLP
>1201 Third Avenue, Suite 4900
>Seattle, WA 98101-3099
>JSanders@perkinscoie.com
>Attorneys for Boeing

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 11th day of August, 2014.

>Reba Weiss, WSBA #12876
>Teller & Associates
>Attorneys for Alexander

**ALEXANDER'S TRIAL BRIEF – p. 19**
**Case No. 2:13-CV-01369**

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172