THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JILL ALEXANDER, an individual, | No. 2:13-cv-1369-RAJ |
| Plaintiff, | DEFENDANT BOEING'S TRIAL BRIEF |
| v. | |
| THE BOEING COMPANY, a corporation doing business in the State of Washington, | |
| Defendant. | |

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ)

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. FACTS ...................................................................................................................... 2

    A. Ms. Alexander's Job at Boeing ..................................................................... 2

    B. Alexander's 2012 Attendance ....................................................................... 2

    C. Alexander's 2013 Attendance and Leave ..................................................... 4

    D. Alexander Fails to Return from Her Final Leave of Absence ...................... 6

    E. Boeing Processes Ms. Alexander's Resignation for Job Abandonment ................ 8

    F. Alexander Withdraws from Alternative Dispute Resolution ................................ 8

III. ARGUMENT ........................................................................................................... 9

    A. Boeing Did Not Interfere With Ms. Alexander's FMLA Rights ........................... 9

        1. Ms. Alexander was fully informed of her FMLA rights .......................... 10

        2. Ms. Alexander did not provide "sufficient notice" of her request for FMLA leave on June 25, 2012 ............................................................ 10

        3. Ms. Alexander was ineligible for FMLA leave starting January 1, 2013 ................................................................................................................ 12

        4. Ms. Alexander's past use of FMLA leave was not a "negative factor" in Boeing's decision to terminate her employment ..................... 12

    B. Boeing Did Not Discriminate Against Ms. Alexander on the Basis of Disability ............................................................................................................. 13

        1. Alexander's migraines prevented her from maintaining regular and predictable attendance, which was an "essential function" of her job ............................................................................................................. 14

        2. Alexander cannot show that a reasonable accommodation was available .................................................................................................. 15

        3. Ms. Alexander's migraine headaches were not a substantial factor in Boeing's decision to terminate her employment ................................ 15

    C. Ms. Alexander Has Greatly Exaggerated and Failed to Mitigate Her Claimed Damages .............................................................................................. 16

IV. CONCLUSION ..................................................................................................... 17

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL122994654.1

## I. INTRODUCTION

Plaintiff Jill Alexander lost her management job at Boeing when she failed to report to work or call in for three consecutive work days. Ms. Alexander had been on a three-month leave of absence due to migraine headaches. She was scheduled to return to work April 29, 2013. She was notified of her return date and instructed how to extend the leave if she needed more time off. She was informed that, if she failed to return to work when her leave ended, she could be subject to discipline, "up to and including termination" of employment. Nevertheless, Ms. Alexander did not report to work or contact her supervisor. Each morning, her supervisor called her cell phone and left messages. After three days of no-show, no-call, Boeing ended Ms. Alexander's employment for job abandonment.

Ms. Alexander, who was not ill that week, testified under oath that she simply missed the messages because she was not "monitoring" her cell phone. But her phone records show that she was monitoring her phone and, in fact, listened to her messages on Monday and Wednesday, in each case hours after her manager had left messages for her. She did not return her manager's calls or report to work, even after being warned that her job was in jeopardy. In fact, immediately after listening to the first message on the Monday she was due back, Ms. Alexander called a Kirkland bar and grill, instead of her job.

In challenging her dismissal, Ms. Alexander alleges that Boeing discriminated against her because of her disability (migraine headaches), failed to reasonably accommodate her, and interfered with her rights under the Family and Medical Leave Act ("FMLA") and the Washington State Family Leave Act ("WFLA"). For the reasons below, her claims are meritless, both legally and factually.

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 1

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II. FACTS

### A. Ms. Alexander's Job at Boeing

Ms. Alexander had an important job at Boeing. She worked as a procurement manager on Boeing's 787 Dreamliner project, supervising a team of 10 to 13 employees. Her team was responsible for managing the suppliers in Asia, Australia, Europe, and the United States who build the Dreamliner's wings and other components. Ms. Alexander earned $104,300 in base salary, plus benefits and bonuses.

### B. Alexander's 2012 Attendance

The evidence will show that Ms. Alexander has suffered from migraine headaches since she was 11 years old. At Boeing, Ms. Alexander used FMLA leave and received reasonable accommodations. As a manager, Ms. Alexander received training as recently as 2012 on the FMLA. The evidence will show that Ms. Alexander was familiar with her rights and responsibilities under the FMLA and the WLAD.

Despite her headaches, prior to 2012 Ms. Alexander generally maintained regular attendance at Boeing. In early 2012, however, Ms. Alexander's attendance became erratic. Between January and June, she missed 31 full days of work and another 12 partial days. Boeing employees who miss work can "cover" their absences in a variety of ways—for example, through sick time, vacation time, approved FMLA, or approved medical leave. If the time is covered, it is considered excused. Absences not covered by one of these methods are unexcused and can result in discipline.

To cover her absences in 2012, Ms. Alexander used a combination of paid sick time and paid vacation time. However, because Ms. Alexander did not have enough accrued sick or vacation time, many of her absences in the first half of 2012 were unexcused. On June 21, Ms. Alexander's supervisor Jeff Sells, his supervisor Mike Dickinson, and Boeing human resources representative Lisa-Marie Gustafson met with Ms. Alexander to discuss her excessive absenteeism. Ms. Alexander was warned that her attendance was unsatisfactory and she would

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL122994654.1

be disciplined if it did not improve. Because Ms. Alexander was out of sick and vacation time, Ms. Gustafson recommended that she contact TotalAccess, Boeing's benefits service center, to see whether she might be eligible for FMLA. TotalAccess automatically routes employee leave requests to Aetna, Boeing's third-leave administrator.

Ms. Alexander took Ms. Gustafson's advice. She saw her doctor on June 22 and submitted a medical certification for intermittent FMLA leave for her migraines the same day. Boeing policy requires that intermittent FMLA leave be requested within two business days of starting the leave.

Ms. Alexander failed to comply with this two-day request rule. The next week, Ms. Alexander missed three more days of work—June 25, 26, and 27. June 26 and 27 were approved for FMLA leave. Ms. Alexander's June 25 absence was not approved because Ms. Alexander did not request FMLA leave until after she returned to work on June 28. The unexcused absence of June 25 was Ms. Alexander's twelfth absence (11 full days and 1 partial day) in 2012 not covered by approved leave. Because Ms. Alexander had previously been warned, she received a Corrective Action Memorandum or "CAM." This CAM was a written warning; Ms. Alexander did not suffer any reduction in pay, time off of work, or any other material adverse consequence.

In July, August, and September of 2012, Ms. Alexander missed another 19 days of work (and 1 partial day). Ms. Alexander used FMLA leave, sick leave, and/or vacation leave to cover those absences. Ms. Alexander, who owns Pomeranian "show" dogs, attended several dog shows during this period. Ms. Alexander took FMLA leave September 26 through 28 (Wednesday through Friday) and then attended the Richland Kennel Club dog show more than 200 miles from her home the following day. Ms. Alexander took FMLA leave on October 10 (a Wednesday) and attended the Idaho Capital City Kennel Club dog show—more than 500 miles from her home—on October 11 and 12.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

A few days later, on October 16, commenced a two-month, medical leave of absence for her migraine condition, also covered by the FMLA. Ms. Alexander received short-term disability pay during this leave of absence. The evidence suggests that during that leave, Ms. Alexander attended at least three other dog shows—the Umpqua Kennel Club dog show on November 15 and 16 in Roseburg, Oregon; the Rogue Valley Kennel Club dog show on November 17 and 18, also in Roseburg; and the Columbia Pomeranian Club dog show on December 6 and 7, in Ridgefield, Washington.

Ms. Alexander's medical leave lasted until December 17, when she returned to work for four days just before Boeing's annual paid holiday shutdown between Christmas and New Year's.

### C.  Alexander's 2013 Attendance and Leave

Ms. Alexander had missed nearly 100 days of work in 2012. By January 1, 2013, she was no longer eligible for FMLA leave because she had worked fewer than 1,250 hours in the previous 12 months. According to the time records she submitted and certified as accurate, Ms. Alexander had worked just 1203.3 hours in 2012—over a full work week's short of the eligibility threshold. Although Ms. Alexander's FMLA certification had expired in December, she did not see a doctor to request an active certification at any point before January 29, 2013.

After the holiday break, Ms. Alexander reported for work on Wednesday, January 2, 2013. However, she stayed home the rest of the week to care for a sick dog. Under normal Boeing policy, vacation must be pre-scheduled and may not be used for last-minute personal absences. Mr. Sells initially considered treating Ms. Alexander's unplanned dog absences as unexcused. It was unclear, however, whether Ms. Alexander had been clearly instructed on the policy. Upon consulting with the new human resources generalist for the organization, Rachael Williams, Mr. Sells decided to allow Ms. Alexander to use vacation days to excuse her early December absences.

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 4

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Ms. Alexander missed work again on January 18 and 21 (a Friday and a Monday), reporting "stomach issues." She covered those absences with sick leave. Ms. Alexander missed work on January 23, 24, 25 and 28, reporting migraine headaches. She used the remaining balance of her sick leave to cover part of this time, but she did not have enough to cover all three days. On January 24, Ms. Alexander contacted TotalAccess to request FMLA leave for the remainder, but she was no longer eligible for FMLA because she no longer met the statutory minimum of 1,250 hours worked over the previous 12 months. Ms. Alexander did not ask TotalAccess if she were eligible for FMLA leave. Nor did Ms. Alexander log on to the TotalAccess internet portal to check her own eligibility.

Ms. Alexander returned to work on Tuesday, January 29. She left at approximately 9 a.m. for a doctor's appointment; she often worked partial days or flexible hours in order to accommodate her medical needs. Upon her return around the noon hour, Mr. Sells and Ms. Williams told Ms. Alexander that Boeing would be issuing another CAM for unsatisfactory attendance. Because Ms. Alexander was out of sick leave and vacation leave and no longer eligible for the FMLA, Ms. Williams advised her to contact TotalAccess about other kinds of leave Boeing offered to help her avoid further unexcused absences. In addition, after Ms. Alexander suggested that the stress of her job might be triggering her migraine headaches, Ms. Williams asked Ms. Alexander whether she would be interested in voluntarily moving to a less stressful, non-management position. Ms. Alexander agreed that this might be a very good option. Ms. Williams said she would let Ms. Alexander know later in the day how long the suspension would last. At or around 3 p.m., Ms. Williams informed Ms. Alexander that the CAM would include a five-day suspension and it would run from Friday to Thursday to correspond with her normal workweek.

Ms. Alexander did not come work the next day. Instead, Ms. Alexander called Ms. Williams and told her she was taking a medical leave of absence. Because Ms. Alexander

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL122994654.1

commenced an approved leave of absence, Boeing never did issue the second CAM, and Ms. Alexander was never suspended.

### D. Alexander Fails to Return from Her Final Leave of Absence

On February 22, Ms. Alexander extended her leave of absence through Friday, April 26. On March 21, Ms. Alexander informed her headache specialist that she was "due to go back" to work on April 29. From March 29 to April 1, 2013, Ms. Alexander attended the Oceanside Kennel Club Dog Show in British Columbia.

Two weeks before Ms. Alexander's leave was scheduled to end, Aetna sent her a letter outlining the return to work process. The letter read, "**You are receiving these instructions because your leave is scheduled to end on 04/26/2013 <u>and you are expected to return to work on your next scheduled work day</u>**," which was April 29. If Ms. Alexander needed an extension, she was instructed to "[**r**]**equest an extension before your leave ends.**" The letter further warned that unexcused absences could result in "corrective action up to and including termination."

Boeing expected Ms. Alexander to return to work on April 29. Mr. Sells advised his team that Ms. Alexander was returning to her management position. *Id.* When the procurement agent who had served as temporary manger during Ms. Alexander's absence asked Ms. Williams to renew his parking pass, she politely declined: "as Jill is scheduled to return on Monday, we will no longer need you in the temp mgr position." Mr. Sells had Ms. Alexander's work space prepared for her to resume her management role. For her part, Ms. Alexander concedes that she knew her leave was expiring on that date.

Yet Ms. Alexander did not report to work or call in as scheduled on Monday, April 29. Nor did she attempt to extend her leave of absence before it ended, as Aetna had instructed. Ms. Alexander also did not see a doctor to seek medical approval to extend her leave.

When Ms. Alexander failed to show up for work, Mr. Sells phoned her repeatedly, but Ms. Alexander did not answer or return his calls. On April 29, Mr. Sells called Ms. Alexander's

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 6

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

cell phone at 9:16 a.m. and left a voice message telling her she was expected back at work and asking her to call him. Mr. Sells also dialed the landline phone number that Ms. Alexander had provided to Boeing. But an unknown man answered and told him that no one named Jill lived there. Even though Ms. Alexander's Boeing cell phone was her only working telephone at the time, she claims that she did not hear her phone ring or check her voicemail.

In fact, Boeing phone records show that Ms. Alexander *did* check her voicemail on the afternoon of Monday, April 29, the first day she was expected back at work. Specifically, she checked her voicemail at 2:46 p.m. that day, more than five hours after Mr. Sells had left his message. But Ms. Alexander did not return Mr. Sells's call. Instead, immediately after listening to her messages, Ms. Alexander placed a call to The Game Neighborhood Grill & Bar, an establishment near her home in Kirkland.

The next day, April 30, Ms. Alexander again failed to report for work or call in to say she would be absent. At 9:17 a.m., Mr. Sells called her. Ms. Alexander did not answer, so Mr. Sells left another message. Ms. Alexander did not return his call. Nor did Ms. Alexander call TotalAccess to extend her leave.

On Wednesday, May 1, Ms. Alexander still did not return to work. She still did not call in and she did not call TotalAccess to extend her leave. At 9:04 a.m., Mr. Sells tried her cell phone a third time. Ms. Alexander did not answer and Mr. Sells left another message, urging her to call him and warning her that she was putting her job in jeopardy. Ms. Alexander did not call him back.

At 6:44 p.m. Ms. Alexander called TotalAccess, but because it was well after business hours, she was unable to speak with a live person. Ms. Alexander then listened to her voicemail, and finally, she contacted Mr. Sells by sending him a text message. The text said she had not been monitoring her phone and would call him the next morning. Though she had been warned her job was on the line, Ms. Alexander did not report to work next morning.

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 7

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### E. Boeing Processes Ms. Alexander's Resignation for Job Abandonment

Under Boeing policy, "Failure of the employee to contact the Company within three (3) working days after the expiration of the leave of absence will result in termination of employment." As a result of Ms. Alexander's failure to report to work as scheduled, Boeing processed her resignation for job abandonment. Mr. Sells and Ms. Williams called Ms. Alexander on Friday, May 3 to tell her of the decision.

Notably, Ms. Alexander does not claim she was medically unable to work the week of April 29. Although she called TotalAccess on Thursday, May 2, to request a leave extension, she never submitted medical information that would confirm she needed additional time off for medical reasons beyond the April 26 date set by her doctors. In fact, Ms. Alexander admits that she has not seen any health care professional for any reason since April 3, 2013. Although she had an appointment scheduled with her neurologist for May 3, 2013, she did not show up.

### F. Alexander Withdraws from Alternative Dispute Resolution

At Ms. Williams's suggestion, Ms. Alexander appealed her separation from Boeing through the company's Alternative Dispute Resolution ("ADR") procedure. Ms. Alexander argued that her text message to Mr. Sells on Wednesday night should have sufficed as notice "within 3 working days, per policy" following her failure to return from a leave of absence. She requested reinstatement with Boeing.

While the ADR process was pending, Mr. Sells spoke with Jeff Plant, a Boeing director who was friends with Ms. Alexander. Mr. Plant said he might have a position open on his team and asked Mr. Sells if he would be open to Ms. Alexander returning to Boeing in that capacity. Mr. Sells, who had himself promoted Ms. Alexander to management, said that he had no objections to Ms. Alexander rejoining the company if that was the result of the ADR process. Mr. Sells would have been the effective decision-maker in the ADR process. Yet on June 10, 2013, without explanation, Ms. Alexander withdrew from ADR.

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 8

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### III.     ARGUMENT

**A.     Boeing Did Not Interfere With Ms. Alexander's FMLA Rights.**

Alexander alleges that Boeing "interfered with [her] protected medical leaves" in violation of the FMLA and the WFLA. The FMLA entitles "eligible employees" to up to 12 weeks of unpaid leave each year for their own serious illnesses or to care for family members. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). The WFLA "mirrors the provisions of the FMLA," and " 'must be construed to the extent possible in a manner that is consistent with [the FMLA].' " *Washburn v. Gymboree Retail Stores, Inc.*, No. C11-822RSL, 2012 WL 3818540, at *9 (W.D. Wash. Sept. 4, 2012) (quoting RCW 49.78.410).

The FMLA and WFLA (collectively, "FMLA") create "two interrelated, substantive employee rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). First, an eligible employee "has a right to use a certain amount of leave for protected reasons." *Id.*; *see* 29 U.S.C. § 2612(a). Second, an eligible employee "has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder*, 259 F.2d at 1122; *see* 29 U.S.C. § 2614(a). The FMLA makes it unlawful to "interfere with, restrain, or deny" these rights. 29 U.S.C. § 2615(a)(1). To establish an FMLA interference claim, an employee must prove by a preponderance of the evidence that (1) she was eligible for the FMLA's protections, (2) she worked for a covered employer, (3) she was entitled to leave, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

Ms. Alexander asserts four theories of liability on her FMLA claim, each meritless. First, she alleges that Boeing interfered with her FMLA rights by not apprising her of her FMLA rights earlier than June 21, 2012. Second, Ms. Alexander alleges that Boeing unlawfully denied her request for FMLA leave on June 25, 2012. Third, Ms. Alexander that Boeing unlawfully denied her request for FMLA leave on January 25, 26, and 27. Fourth, Ms. Alexander alleges that Boeing violated the FMLA by considering her past use of protected leave as a "negative factor"

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

in its decision to terminate her employment in May 2013. *See* 29 C.F.R. § 825.220(c). Ms. Alexander's theories fail as a matter of law and are unsupported by the evidence.

### 1. Ms. Alexander was fully informed of her FMLA rights.

Ms. Alexander has no claim arising from Boeing's alleged failure to inform her of her FMLA rights at some point prior to June 21, 2012. The evidence will show that Ms. Alexander was first apprised of her FMLA rights *in 2004—*eight years earlier. Moreover, Boeing *allowed* Ms. Alexander to take time off in 2012 for her migraine headaches without any adverse consequences whatsoever. The FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). To prevail on an FMLA claim, an employee must prove a "real impairment of their rights and resulting prejudice." *Id.* at 90. Ms. Alexander was actually *better* off for Boeing having not required her to use her FMLA leave earlier than June 20, 2012, because this gave her more FMLA leave to use for the rest of 2012—and Ms. Alexander used all her protected leave that year. *See id.* ("Ragsdale has not shown that she would have taken less leave or intermittent leave if she had received the required notice. . . . Even if Wolverine had complied with the notice regulations, Ragsdale still would have taken the entire 30–week absence."). The evidence does not support Ms. Alexander's allegations that Boeing violated the FMLA by not telling Ms. Alexander what she already knew—that she had the right to take 12 weeks of unpaid leave for a serious health condition.

### 2. Ms. Alexander did not provide "sufficient notice" of her request for FMLA leave on June 25, 2012.

Nor does Ms. Alexander have an actionable FMLA interference claim arising out of the written warning she received for her unexcused absence on June 25, 2012. The evidence will show that Ms. Alexander did not provide Boeing with sufficient notice of her intent to take FMLA leave on June 25, 2012—a necessary element of her claim. Although Ms. Alexander requested FMLA leave to cover her absence, Ms. Alexander waited until June 28 to make this

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 10

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

request.  Boeing policies require employees to "[i]nitiate a timely request for an FMLA absence within two business days after the start of the leave."  Because Ms. Alexander did not provide Boeing sufficient notice of her intent to use protected leave, the FMLA permitted Boeing to deny her request and formally warn her for the attendance infraction.

The Department of Labor's FMLA regulations specify that an employee taking intermittent leave must provide the employer notice of the exact dates of the leave "as soon as practicable."  *See* 29 C.F.R. §§ 825.302(a), 825.303(a).  The regulations state that "it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day" that she "becomes aware of the a need for FMLA leave."  *Id.* § 825.302(b).  An employer may deny a leave request where the employee fails to comply with its "usual notice and procedural requirements."  *Id.* § 825.302(d); *see also id.* § 825.303(a).  The evidence will show that Alexander did not provide Boeing notice "as soon as practicable" of her need for leave on June 25.  Ms. Alexander became aware of her need for intermittent FMLA leave no later than the morning of June 25, when she experienced a migraine headache and did not report to work.  There is no evidence that Ms. Alexander's migraine headaches were so severe on June 25, 26, or 27 that she was not "able to use . . . a phone," 29 C.F.R. § 825.303(c), or that any emergency or other extenuating circumstance prevented her from requesting leave.  Boeing's two-day notice policy is straightforward, objectively reasonable, and consistent with the FMLA.

Ms. Alexander concedes that she did not comply with this policy.  She claims, however, that Boeing was not allowed to enforce its two-day rule because she did not have "actual notice" of the requirement.  The evidence will show, however, that Ms. Alexander *did* have actual notice of the two-day rule, which is clearly spelled out and was available for Ms. Alexander to review in Boeing's Leave of Absence Policy Handbook.  The FMLA regulations provide that the actual notice requirement is satisfied where it is included "in either an employee handbook or employee distribution, as required by § 825.300."  *Id*.  It was not a violation of the FMLA for Boeing to

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL122994654.1

count Ms. Alexander's June 25 absence as unexcused (her twelfth of the year), and to issue her a warning for her unacceptable attendance.

### 3. Ms. Alexander was ineligible for FMLA leave starting January 1, 2013.

Ms. Alexander was statutorily ineligible for FMLA leave as of January 1, 2013. To be "eligible" under the FMLA, an employee must have accrued at least 1,250 "hours of service" in the 12 months prior to the requested leave date. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a). Based on the time records Ms. Alexander herself entered, in January 2013 her actual hours worked in the prior twelve months never exceeded 1,208.7 hours. By May 2, 2013, when Ms. Alexander's employment was terminated, she had worked just 794.2 hours in the prior 12 months.

Because Boeing kept accurate time records, Ms. Alexander must prove that her "hours of service" are more than what is shown in Boeing's records. *See* 29 C.F.R. § 825.110(c)(3) (the employer bears the burden only if the "employer does not maintain an accurate record of hours worked by an employee"); *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986). The evidence will show that Ms. Alexander did not work a sufficient number of hours in 2012 to be eligible for the FMLA at any point in 2013.

### 4. Ms. Alexander's past use of FMLA leave was not a "negative factor" in Boeing's decision to terminate her employment.

Boeing processed Ms. Alexander's termination for job abandonment because she did not return to work or call in for three business days after her leave ended. Even after she had been told her job was at risk, and even though she was not experiencing any medical issues, Ms. Alexander failed to report to work that entire week. Boeing's leave of absence policy is clear: "Failure of the employee to contact the Company within three (3) working days after the expiration of the leave of absence will result in termination of employment." The evidence will show that Ms. Alexander's violation of this policy was what motivated the decision to terminate her employment. There is no evidence that Ms. Alexander's use of FMLA leave nearly five

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

months earlier motivated Mr. Sells and Ms. Williams's decision-making. Mr. Sells's legitimate motivations are confirmed by his willingness to allow Ms. Alexander's reinstatement through the ADR process—an option that she abandoned. In short, the evidence will show that Ms. Alexander broke a clear company rule and Boeing's decision-makers enforced it fairly, impartially, and without unlawful animus.

That rule, requiring employees report to work or call in after their leave expires, is consistent with the FMLA. "The FMLA does not authorize employees to 'keep their employers in the dark about when they will return' from leave." *Righi v. SMC Corp.*, 632 F.3d 404, 410-11 (7th Cir. 2011) (quoting *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000)). Ms. Alexander not only failed to return to work on April 29 after her leave had expired, she ignored Mr. Sells's multiple phone calls and voicemail messages that day and in the days that followed, even though she checked her voicemail and used her phone in this period. Ms. Alexander's "failure to respond to these calls or otherwise contact [her] employer dooms [her] FMLA claim." *See Righi*, 632 F.3d at 410. Nothing in the FMLA prevented Boeing from processing Ms. Alexander's termination under these facts.

**B.    Boeing Did Not Discriminate Against Ms. Alexander on the Basis of Disability.**

Ms. Alexander asserts two forms of disability discrimination claims—a reasonable accommodation claim and a disparate treatment claim. Her reasonable accommodation claim requires that she prove by a preponderance of the evidence that she (1) had a disability that "substantially limited . . . her ability to perform the job"; (2) she was qualified to perform the "essential functions" of the job; (3) she gave Boeing notice of the disability and its substantial limitations; and (4) upon notice, Boeing failed to affirmatively adopt measures that were available to it and medically necessary to accommodate the disability. *See Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145 (2004); Wash. Pattern Jury Instr. Civil ("WPI") 330.33. To establish her disparate treatment claim, Ms. Alexander must prove that (1) she has a disability; (2) she is able to perform the essential functions of the job with a reasonable accommodation; and (3) that

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 13

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

her disability was a substantial factor in Boeing's decision to terminate her employment.  WPI 330.32.

The evidence will not support Ms. Alexander's disability discrimination claims, for three simple reasons, among others:  First, Ms. Alexander's migraine headaches prevented her from maintaining regular and predictable attendance, which was an "essential function" of her job.  Second, there is no evidence that any reasonable accommodation of Ms. Alexander's migraine condition was possible.  Third, there is no evidence that Ms. Alexander's alleged disability played any role, let alone a "substantial" role, in Boeing's decision to terminate her for job abandonment.

### 1. Alexander's migraines prevented her from maintaining regular and predictable attendance, which was an "essential function" of her job.

To prove her accommodation claim, Ms. Alexander "must demonstrate that . . . she can perform the essential functions of the job as determined and applied by the employer—not that the employer could revamp the essential functions of a job to fit the employee." *Fey v. State*, 174 Wn. App. 435, 452-53 (2013).  Ms. Alexander cannot make this showing because her migraine headaches prevented her from maintaining regular and predictable attendance at Boeing.  As the Ninth Circuit has explained, "[i]t is a 'rather common-sense idea . . . that if one is not able to be at work, one cannot be a qualified individual' " under the Americans with Disabilities Act ("ADA").  *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)).  In the 16 months prior to her separation from Boeing, Ms. Alexander missed over 181 work days (out of 336 scheduled)—an attendance rate of just 46 percent.  The evidence will show that reliable attendance was an essential function of Ms. Alexander's management job, which required coordinating and overseeing an entire team of employees and interfacing with customers and suppliers.  Her subordinates, peers, and supervisor depended on her to be at work on a regular, predictable basis, but Ms. Alexander's migraines made that impossible.  The evidence will show

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 14

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that Ms. Alexander could not perform this essential function of her job. This simple fact defeats her disability discrimination claims at their threshold.

### 2. Alexander cannot show that a reasonable accommodation was available.

Ms. Alexander's inability to maintain steady attendance not only prevented her from performing an essential function of her job, it also meant that no reasonable accommodation of her disability was possible. The employer's "duty to accommodate is 'limited to those steps reasonably necessary to enable the employee to perform his or her job.' " *Riehl*, 152 Wn.2d at 146 (quoting *Doe v. Boeing Co.*, 121 Wn.2d 8, 21 (1993)). Ms. Alexander cannot meet this burden because she cannot identify any accommodation that would have enabled her to attend work regularly and predictably. Ms. Alexander's physician will testify that Ms. Alexander was unable to work from any location when she was in the throes of a migraine headache. Her telecommuting proposal is thus a red herring; what she is really proposing was "an open-ended schedule that would allow her to come and go as she pleased." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1239 (9th Cir. 2012) (alterations omitted) (quoting *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 951 (7th Cir. 2001) (en banc)). For this reason, too, the evidence will not support Ms. Alexander's disability discrimination claims.

### 3. Ms. Alexander's migraine headaches were not a substantial factor in Boeing's decision to terminate her employment.

Finally, the evidence will show that Boeing did not terminate Ms. Alexander because of her claimed disability, but for a legitimate, lawful, and unassailable reason: she did not return from leave or call in within three working days. Boeing's policy provides that it *will* terminate an employee who fails to contact the Company within three working days after her leave of absence ends. As a factual matter, Ms. Alexander violated this policy. Mr. Sells and Ms. Williams both confirmed that this was what motivated the decision to separate Ms. Alexander from Boeing. There will be no evidence to contradict their testimony.

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 15

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**C.     Ms. Alexander Has Greatly Exaggerated and Failed to Mitigate Her Claimed Damages**

Ms. Alexander seeks economic damages in excess of one million dollars, damages for the emotional distress she has allegedly suffered, and double-damages under the FMLA's liquidated provision. *See* 29 U.S.C. § 2617(a)(1)(A)(iii). Her claims for damages are grossly exaggerated. Her claim for lost wages rests on the false premise that Ms. Alexander would have continued to earn over well over $100,000 per year but for Boeing's decision to terminate her employment. In light of her attendance record, that premise is implausible. Ms. Alexander's claim for emotional distress is belied by her having failed to seek any mental health treatment whatsoever since her separation from Boeing. *See EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, No. CIV 02-1644 JB/RHS, 2008 WL 2229489 (D.N.M. Feb. 14, 2008) ("It is reasonable that a jury could determine that Peters' failure to seek professional counseling or treatment has a tendency to make the EEOC's claim that he has sustained emotional injuries less probable.") (internal quotation marks omitted).

Ms. Alexander's request for liquidated damages under the FMLA is misplaced because, the evidence will show, Boeing acted at all times in "good faith" and with "reasonable grounds for believing that" its actions were "not a violation" of the statute. 29 U.S.C. § 2617(a)(1)(A)(iii). Boeing unquestionably had a good faith belief that Ms. Alexander was ineligible for FMLA leave as of January 1, 2013, because she had reported fewer than 1,250 hours of service in 2012. And throughout Ms. Alexander's 181 absences from work in 2012 and 2013, Boeing's decision-makers relied reasonably and in good faith on its leave of absence policies and procedures.

Finally, Ms. Alexander has failed to mitigate her claimed damages. The evidence will show that Ms. Alexander unreasonably withdrew from the ADR process even though Mr. Plant had suggested she join his team and even though she knew Mr. Sells (the effective decision-maker in the ADR) did not oppose her reinstatement. Had Ms. Alexander pursued this process—

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL122994654.1

which would have required minimal effort on her part—she almost certainly would have been reinstated to an equivalent position and avoided most if not all of her alleged damages. Ms. Alexander's sudden withdrawal from ADR was objectively unreasonable.

## IV.   CONCLUSION

For nearly three months, Ms. Alexander took a leave of absence that was not protected by the FMLA, not supported by medical documentation, and not approved by Boeing's leave servicer. Nonetheless, when that leave expired, to hold on to her job she had to do one thing: just show up. Not only did Ms. Alexander not show up to work, she did not call in, and she ignored her manager's calls and messages for three days. A manager making a six-figure salary, Ms. Alexander demonstrated a total disregard for her job and Boeing properly treated her actions as job abandonment. The evidence will show that Boeing's decision was reasonable and lawful.

DATED:  August 11, 2014

By: *s/ James Sanders*
By: *s/ Zachary P. Jones*
James Sanders #24565
Zachary P. Jones #44557
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  JSanders@perkinscoie.com
           ZJones@perkinscoie.com

Attorneys for Defendant The Boeing Company

BOEING'S TRIAL BRIEF (No. 2:13-cv-1369-RAJ) – 17

LEGAL122994654.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## CERTIFICATE OF SERVICE

On August 11, 2014, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following document:

**DEFENDANT BOEING'S TRIAL BRIEF**

| | |
|---|---|
| Reba Weiss, WSBA #12876 | _____ Via Hand Delivery |
| Andrea Scheele, WSBA #36773 | _____ Via U.S. Mail, 1st Class, Postage Prepaid |
| Teller & Associates | |
| 1139 34th Avenue, Suite B | _____ Via Overnight Delivery |
| Seattle, WA 98122 | _____ Via Email |
| reba@stellerlaw.com | |
| AndreaS@stellerlaw.com | **X** Via E-filing |
| Tel. (206) 324-8969 | |
| Fax (206) 860-3172 | |

Attorneys for Plaintiff

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 11th day of August, 2014.

      *s/ Zachary P. Jones*
      Zachary P. Jones
      Counsel for The Boeing Company

CERTIFICATE OF SERVICE (No. 2:13-cv-1369-RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL122994654.1